NEUBAUER, C.J.
*759 ¶ 1 Arline A. Brogli appeals from an order adopting a referee's recommendation for the division of property interests, asserting various procedural problems with the court's adoption of the referee's amended report. Because the circuit court failed to address Arline's objection to the *39 referee's *760 amended report and adopted it without reviewing the evidence considered by the referee, the court was unable to appropriately exercise its discretion in determining whether the referee's challenged findings of fact were clearly erroneous as required by statute. We therefore reverse and remand.
BACKGROUND
¶ 2 This 2012 suit started as a foreclosure action against Arline and Kathryn Brogli (Arline's former daughter-in-law), and their husbands.[1] The property was a residence and about eighty-one acres of land in the Village of Fredonia.
¶ 3 In 2013, the parties entered into a stipulation and order by which they would sell a portion of the land (about seventy-six acres), use the proceeds to pay off the mortgage and other bills, and dismiss the mortgagee bank. After those payments, $183,091.29 remained. Recognizing they had "disagreements over how to divide those net proceeds between themselves" and intending "to preserve the net proceeds of the sale pending the resolution of their disputes," they agreed, and the court ordered them, to place those proceeds into trust, divided equally ($91,545.65 each) between Arline and Kathryn, and held in their attorneys' trust accounts unless disbursed via the parties' written agreement or a court order. Still pending in the action were cross-claims relating to responsibility for the default, rights to possession, and resulting damages. The parties agreed to mediate these claims.
*761 ¶ 4 At a January 2014 hearing, the court allowed amendments to the cross-claims and notified the parties that, if the case did not soon settle, it was inclined to appoint a referee. Arline and Kathryn amended their cross-claims, essentially adding requests for a partition of the property.
¶ 5 Unable to settle, in July 2014, the parties were directed to agree on a referee. The parties selected Attorney Douglas Mann, an experienced bankruptcy trustee. The resulting January 2015 order of reference issued pursuant to WIS. STAT. § 805.06 (2015-16)[2] authorized Mann to regulate the proceedings, require production of evidence, examine witnesses, and maintain the property, all with the aim of determining the property's fair market value, its equitable division, and the basis, if any, for its partition or sale. The order directed Mann to "report his findings and recommendation to the Court."
¶ 6 Mann reviewed documents requested from the parties and deposed Arline and Kathryn. On July 17, 2015, he filed his report, but without the transcript of proceedings and evidence as required by WIS. STAT. § 805.06(5)(a). Mann found the fair market value of the dwelling and remaining five acres was $100,000. Mann also found that, over the years, Kathryn contributed to the dwelling $296,521.50 and Arline possibly contributed $7447.12. Based on those contributions, Mann recommended the value of the property be divided ninety-seven percent to Kathryn and three percent to Arline.
*762 ¶ 7 On July 27, Kathryn sent an e-mail to Mann without copying Arline. The e-mail suggested changes to his report. The report had noted that the net proceeds of $183,091.29 from the 2013 sale were divided equally between the parties, and the report appeared to consider that division a *40 closed issue. Kathryn's e-mail indicated that "the parties did not split" that amount, but rather the attorneys "just held one half of the proceeds in their trust accounts." The e-mail went on to "assume" the $183,091.29 was to be divided in accordance with the 97/3 recommended ratio. Finally, the e-mail suggested other property-related charges totaling $31,464.91 that were Arline's responsibility were already paid out of the proceeds, such that Kathryn should first be paid an equal amount out of the proceeds.
¶ 8 On July 28, Mann forwarded Kathryn's e-mail to Arline, asking for any response in two days, by July 30. Arline did not respond by July 30.
¶ 9 On July 31, Mann amended his report, pointing out Kathryn had advised the $183,091.29 in sale proceeds should be subject to his proposed division.[3] Mann recommended that, given the lack of response from Arline, those proceeds should be divided in accordance with the 97/3 ratio after Kathryn was first paid $31,464.91. On August 4, Kathryn filed a proposed order that would adopt the amended report.
¶ 10 By August 11 letter, Arline objected to Kathryn's proposed order and to the referee's amended report. She copied the circuit court on the letter. Arline complained about Kathryn's failure to copy her in on the July 27 e-mail to Mann, which Arline alleges *763 prevented her from timely responding. She asserted that, "[a]s a result, the basis for [Mann's] amended conclusions do not square with the facts." Specifically, she stated that neither attorney was holding $91,545.65 in trust and the only remaining asset was the residence (and surrounding land), which Mann valued at $100,000. Arline indicated that a "formal response has and will be delivered" to Mann, along with a request that Mann reconsider his recommendation or, alternatively, reinstate his original report. No such "formal" response, however, is identified in the record. We see no other written objections to the report by Arline to the circuit court.
¶ 11 On August 17, Arline advised she was seeking relief under Chapter 13 of the United States Bankruptcy Code, which automatically stayed the circuit court proceedings. See 11 U.S.C. § 362 (2015). Because of the stay, Arline sought dismissal of the action without prejudice. Kathryn opposed the dismissal, noting she was seeking relief from the stay and also expressed concern Arline had not reported her share of the 2013 sale proceeds in the bankruptcy action. Kathryn subsequently moved for confirmation that those proceeds were being held in trust and for adoption by the court of the amended report.
¶ 12 In December 2015, the court requested a status report from the parties.[4] Kathryn advised that the bankruptcy court granted the motion to lift the stay on December 10. She would file the related order once signed. The circuit court set a status hearing for *764 January 20, 2016. On January 4, Kathryn filed the bankruptcy court order lifting the stay.[5] *41 ¶ 13 On January 20, the court held a status hearing. The parties advised the court the remaining property (the dwelling and land) had been sold, subject to bankruptcy court approval (which was subsequently given). The court was also informed, much to its consternation, the $183,091.29 sale proceeds had been disbursed from the attorney trust accounts to Arline and Kathryn.[6] The court pointed to the order requiring counsel to hold those proceeds in trust unless they were disbursed via written agreement or another court order.
¶ 14 Kathryn asserted she had a written agreement to receive the funds. Entitled "Interim Agreement" on the mediator's letterhead, it itemized various points about selling the property and stated Kathryn's counsel was "to release funds in her trust account to" Kathryn. Arline countered that the "Interim Agreement" was a memorandum from a mediation that was not completed, was missing items, was not signed, and its terms were not followed by the parties. As for why Arline received the funds she held in trust, she indicated she took them because Kathryn received her share.
*765 ¶ 15 The court instructed Arline to submit evidence in five days, by January 25 (later adjourned to January 27), that she was authorized to receive the 2013 sale proceeds of $91,545.65.
¶ 16 The court acknowledged Arline's objection to the referee's amendment of the report in response to Kathryn's request that the money held in trust be divided on a 97/3 basis. The court granted Arline thirty days thereafter, by February 26, to submit whatever documents she deemed appropriate to the referee, so that he could consider whether to again amend his report and recommendation.
¶ 17 At the January 27 hearing, the court heard testimony addressing the disbursement of the funds held in trust, but did not hear testimony or argument on the proper division of those funds.[7]
¶ 18 The court heard testimony from Attorney Larry Kahn, the mediator, regarding whether the parties had agreed to disburse the 2013 sale proceeds. According to Kahn, Kathryn requested the written "Interim Agreement," which he provided based off of his notes. Kahn later held a telephone conference, during which Arline asked for release of her share because she was in desperate financial need and it was otherwise unfair that Kathryn had received her share. Kahn recalled the parties agreed Arline could receive funds, but he could not recall the amount, nor was the agreement put in writing. Kathryn denied that she agreed to any such disbursement.
*766 ¶ 19 The circuit court expressed frustration the proceeds placed in trust were disbursed without proper authorization. Based on Kahn's testimony, the court believed there was some understanding to disburse at least some proceeds to Arline, but this did not comply with the requirement that an agreement be in writing. The court acknowledged Kathryn had an agreement to receive the proceeds, but indicated her "Interim Agreement" was *42 more in the nature of a "summary" and was not signed by the parties.
¶ 20 The court began to say that it was "standing by my order that any additional ... submittals to" the referee, Mann, should be made by Arline, but then stopped and reversed course, stating, "I'm just going to adopt Mr. Mann's report as the equitable" outcome. The court indicated the 97/3 split was "consistent with [its] recollection" of handling the divorce action between Kathryn and her husband, in that Arline was not helpful with maintaining the property, and Kathryn worked to keep "the place afloat."
¶ 21 Additional hearings were held in March and April 2016 for the drafting of a final order. On June 1, the court entered the final order, which found the $183,091.29 sale proceeds to be "joint assets of the parties subject to division by this court," and Arline received a share of those proceeds "without the court's consent." The order adopted Mann's amended report recommendation with regard to the parties' interests in the real estate and proceeds. Arline appeals.
DISCUSSION
Standard of Review
¶ 22 Although governed by statute, partition actions are equitable in nature, and we review decisions *767 in equity for an erroneous exercise of discretion. Klawitter v. Klawitter , 2001 WI App 16, ¶¶ 7-8, 240 Wis.2d 685, 623 N.W.2d 169 (2000). "Discretionary acts are upheld if the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Id. , ¶ 8 (citations omitted). Also involved are the interpretation and application of the referee statute, which are questions of law we review de novo. Estate of Grochowske v. Romey , 2012 WI App 41, ¶ 14, 340 Wis.2d 611, 813 N.W.2d 687.
The Circuit Court Adopted the Referee's Report Without Providing Arline an Opportunity to Object to the Recommendation and Factual Findings.
¶ 23 WISCONSIN STAT. § 805.06(5) provides in pertinent part as follows:
(a) The referee shall prepare a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the referee shall set them forth in the report. The referee shall file the report with the clerk of the court and in an action to be tried without a jury, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.
(b) In an action to be tried without a jury the court shall accept the referee's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report *768 and upon objections thereto shall be by motion and upon notice. The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instruction.
(Emphasis added.)
¶ 24 Arline argues an evidentiary hearing was required, but not held, to resolve *43 the claims of partition.[8] She generally refers to her due process rights and trial by jury right under WIS. STAT. § 805.01 and suggests the role of the referee "was advisory at best." She points out that, after the referee finishes its proceedings, it is statutorily required to file the report with a "transcript of the proceedings and of the evidence and the original exhibits," which was not done here. WIS. STAT. § 805.06(5)(a). Arline contends the circuit court erred when it accepted the amended report without addressing her objections, either by conducting an evidentiary hearing or at least receiving and reviewing the evidence considered by Mann.
¶ 25 Kathryn argues, in response, no such hearing was necessary. The circuit court already knew the relevant facts having handled her divorce action, an evidentiary hearing by the court defeats the purpose of a referee, and any error was harmless as the outcome *769 would have been the same. She also asserts Arline did not properly object to the amended report pursuant to the statutory procedure.
¶ 26 As an initial matter, we note that both parties point to alleged procedural problems without adequately developing their arguments. See State v.Pettit , 171 Wis.2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we decline to address undeveloped arguments). Moreover, with one exception discussed below, the procedural issues are first raised before this court. Generally, we do not decide issues raised for the first time on appeal. State v. Caban , 210 Wis.2d 597, 604, 563 N.W.2d 501 (1997). Requiring that issues be raised and argued in the circuit court achieves the important objectives of allowing the court to correct or avoid the alleged error in the first place, eliminating the need to appeal; giving both parties and the circuit court judge notice of the issue and a fair opportunity to address the objection; encouraging attorneys to diligently prepare; and preventing attorneys from sandbagging errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal. State v. Huebner , 2000 WI 59, ¶ 12, 235 Wis.2d 486, 611 N.W.2d 727 ; Caban , 210 Wis.2d at 604-05, 563 N.W.2d 501 ; Hopper v. City of Madison , 79 Wis.2d 120, 137, 256 N.W.2d 139 (1977).
¶ 27 For example, Arline now raises a challenge to the referee's procedure-no evidentiary hearing-without any facts to show this was raised before the referee, or the circuit court, and for which she provides nothing to show that an evidentiary hearing was statutorily required in this case or why it would have made a difference. We will not address forfeited objections *770 and undeveloped arguments. We understand the circuit court's frustration with this matter, as bald allegations abound.
¶ 28 We disagree with Kathryn's undeveloped and forfeited contention that Arline's objection to the amended conclusion was not properly before the circuit court. Kathryn moved for and repeatedly sought the amended report's adoption, and Arline notified both Kathryn and the court of her objection.
¶ 29 Specifically, Arline's August 11, 2015 letter of objection to the referee's report complied with the statute, being *44 timely, in writing, served on Kathryn, and then directed to the court. (Counting ten days from the July 31 amended report in accordance with WIS. STAT. §§ 801.15(1)(b) and 990.001(4)(a) puts the objection deadline at August 14.) Moreover, on August 4, 2015, Kathryn had filed a proposed order to adopt the report. There was no need for Arline to file her own motion in response. Her written objection on August 11 to adoption of the report was timely and known by the court, Kathryn, and Mann.
¶ 30 Then, a stay was put in place for about four months, and at the status conference held after the stay was lifted, Arline's objection to division of the trust funds was again raised before the circuit court in response to Kathryn's motion to adopt the report. Kathryn fails to point to any challenge in the record to the timeliness of Arline's objection and, in any event, she fails to explain how she was prejudiced.
¶ 31 The court and parties were appropriately on notice as to the nature of Arline's only objection. In her August 11 letter, she objected to the referee's amendment of the report three days after Kathryn ex *771 parte asked the referee to amend the report to split the sale proceeds 97/3. Arline objected to the referee's new inclusion of the $183,091.29 held in trust within the 97/3 division, contending that the only assets available for the 97/3 division were the house and surrounding land. Her letter asked that the original report be reinstated and, at the January 20 hearing, she continued her objection. Thus, wholly aside from whether the parties prematurely and inappropriately disbursed the trust funds in violation of the court order, we read her objection as challenging whether the 50/50 disbursement was a factually supported allocation or not.
¶ 32 We conclude that the circuit court erred when it spontaneously accepted the referee's amended report without addressing Arline's objection, or even considering the referee's findings of fact or reviewing the factual evidence supporting those findings.
¶ 33 At the January 20, 2016 status conference, in response to Kathryn's motion to adopt the referee's amended report, and Arline's objection, the circuit court initially recommitted the matter to the referee.[9] The court provided an opportunity for Arline to submit additional documents to the referee to "see if he changes his opinion."
¶ 34 However, on the heels of its understandable exasperation with the parties' decisions to disburse the trust funds, the court sua sponte withdrew its recommitment *772 order a week later and adopted the amended report, finding the 97/3 allocation "equitable" and "consistent with [the court's] recollection" of the circumstances revealed through the divorce proceeding.
¶ 35 When the court took away recommitment to the referee, it precluded Arline from providing any factual information regarding her objection to the amended report to the referee, and subsequently, to the court. In doing so, the court also accepted the amended report without receiving and reviewing the evidence considered, or to be considered, by the referee in light of Arline's objection to the amended conclusion. See Kleinstick v. Daleiden , 71 Wis.2d 432, 439, 238 N.W.2d 714 (1976) (the circuit court is to decide on the return, *45 which includes the referee's report, all of the evidence he had considered, and any exceptions taken to that report).[10]
¶ 36 Under the statute governing a referee's report, the circuit court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it [to the referee] with instruction." WIS. STAT. § 805.06(5)(b). While the referee's conclusion on the legal issue of partition is a recommendation only, the referee's challenged findings of fact are to be accepted unless "clearly erroneous." Id. A factual finding is clearly erroneous if it is against the great weight and clear *773 preponderance of the evidence. Kleinstick , 71 Wis.2d at 439, 238 N.W.2d 714 (the findings of the referee have the effect of findings of fact by a circuit court and are to be upheld unless they are contrary to the great weight and clear preponderance of the evidence).[11]
¶ 37 Without even reviewing the evidence considered by the referee, it is of course impossible for a circuit court to determine whether any factual findings are clearly erroneous, pointing up why the statute requires the report to be accompanied by the "transcript of proceedings and of evidence and the original exhibits." WIS. STAT. § 805.06(5)(a). Because the evidentiary record supporting the amended report was not provided to the circuit court, the court was unable to determine whether the referee's amended findings were against the great weight and clear preponderance of the evidence, as Arline contended. The absence of an exercise of discretion is an erroneous exercise of discretion. See Piaskoski & Assocs. v. Ricciardi , 2004 WI App 152, ¶ 30, 275 Wis.2d 650, 686 N.W.2d 675.[12]
*46 *774 ¶ 38 It may be true, as Kathryn asserts, that presiding over her divorce action imparted to this circuit court knowledge of many relevant facts, although she makes no issue or claim preclusion argument. Putting aside whether the divorce proceeding, in which Arline was not a party, included every fact relevant to Arline's partition claim, having such *775 knowledge does not obviate the court's statutory duty to review the evidence considered by the referee and compare it with his challenged factual findings. See WIS. STAT. § 805.06(5)(b). Further, a decision based on knowledge or facts not of record makes it impossible for us to properly review and decide the appeal. See Riley v. Extendicare Health Facilities, Inc. , 2013 WI App 9, ¶ 48, 345 Wis.2d 804, 826 N.W.2d 398 (2012) (we decline to rule on issues without an adequate record); Hastings Realty Corp. v. Texas Co. , 28 Wis.2d 305, 318, 137 N.W.2d 79 (1965) (a reviewing court cannot resolve questions when the pertinent facts are not of record).
¶ 39 Beyond that, although Kathryn generally asserts that the court's adoption of the report without the evidence was harmless because the report was "well-reasoned," and the findings were "persuasively presented," she offers no detail and does not otherwise develop the argument.
¶ 40 Finally, we note that Arline fails to describe what evidence she believes should have been considered by the referee or the circuit court to show that there should have been a 50/50 split of the funds held in trust, but argues generally that she was denied an opportunity to put such evidence in the record. We note that no evidence in this record has been identified to support Arline's suggestion that there was a determination that a 50/50 split was proper, and this position is clearly inconsistent with the stipulation and order that those funds remain untouched until the parties' disagreements were resolved. It is also inconsistent with Arline's acceptance of the referee's recommended 97/3 split as to the home and land, as there is no apparent reason to treat the proceeds put into trust any differently. However, the absence of the referee's *776 record, combined with the court's withdrawn opportunity to provide such evidence, leaves us highly skeptical, yet guessing. This highlights again the importance of having a case and evidentiary record that is complete, as the inadequacy of this record impedes our ability to determine whether any error as to this preserved issue was prejudicial. See Riley , 345 Wis.2d 804, ¶ 48, 826 N.W.2d 398 ; Hastings Realty , 28 Wis.2d at 318, 137 N.W.2d 79.[13]
¶ 41 Because the circuit court failed to address Arline's objection to the referee's *47 amended report and adopted the report without reviewing the evidence considered or to be considered by the referee, the court was unable to appropriately exercise its discretion in determining whether the referee's challenged findings of fact were clearly erroneous as required by statute. We reverse the order and remand for further proceedings.
By the Court. -Order reversed and cause remanded.

Arline's husband, Stephen Brogli, is deceased. Kathryn's former husband, Daniel Brogli, was divested of any interest in the subject property and is not involved in this appeal. Because of the common last name, we will refer to the parties by their first names.

All references to the Wisconsin Statutes are to the 2015-16 version.

Mann dated his amended report July 31. It was date stamped by the court clerk on August 3.

Certain background facts were obtained through the Wisconsin Circuit Court Access system, https://wcca.wicourts.gov (last visited on April 16, 2018).

On January 15, Kathryn filed an affidavit in support of a motion essentially for a finding of contempt against Arline for having taken the 2013 sale proceeds without authorization. Although a proposed order accompanied the affidavit, we find no actual motion in the record.

Arline claims the court was previously made aware of this disbursement twice: during an in-chambers, off-the-record discussion at the January 2014 status conference and via Arline's August 11, 2015 letter objecting to the amended report on grounds the attorneys no longer retained the proceeds in their trust accounts.

At the January 27 hearing, Arline's counsel stated: "The initial report did not discuss these trust funds. It was never an issue ... [until Kathryn] then saw that the numbers were 97 to 3 percent ... she piled on and she piled on.... [Had the report not been amended] this case would have been very easily settled."

In a footnote, Arline cites Wis. Stat. § 842.07, which applies to partition actions: "On default and proof or after trial of issues, the court shall by findings of fact and conclusions of law determine the rights of the parties." How this provision bears upon the circumstances of this case, particularly after the order of reference under Wis. Stat . § 805.06, is not developed, however. See State v. Pettit , 171 Wis.2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we decline to address undeveloped arguments).

This was appropriate, given that Kathryn filed her objections to the report ex parte, which the referee forwarded to Arline the next day, but then amended the report three days later. The stay then took effect after Arline objected. The next opportunity to raise the issue was at the status conference, and the court ordered Arline to take her objection back to the referee.

The circuit court heard the mediator's testimony regarding authorization to disburse the funds held in trust by Arline. Arline does not challenge the circuit court's findings and conclusion that the disbursement of the trust funds prior to a determination by the court or written agreement was unauthorized. She challenges only the proper allocation of those funds.

Neither party objected to the appointment of the referee or the order of reference either before the circuit court or on appeal, nor do they object to the statutory procedure the legislature has provided for the circuit court's review of the report.

The Dissent claims Arline failed to object to the amended report's allocation of the trust funds on a 97/3 basis, limiting her objection to one based on an agreement to disburse the funds 50/50. We do not read Arline's objections so narrowly in light of the entire proceeding. First, the Dissent reviews Arline's August 11 letter in isolation. It fails to recognize that Arline's letter was prompted by, and directly objected to, the sudden application of the 97/3 split to the trust funds, and Arline thus asked for reinstatement of the original report. Indeed, at the January 20 status conference, the court recognized (1) Arline's objection, (2) that she had no real opportunity to provide factual information before the referee amended his report, and (3) that this was a separate issue that required a separate order sending the parties back to the referee to "see if he changes his opinion." Second, we fail to see why the court would have issued two orders if Arline's only objection was that the parties had agreed to disburse the funds 50/50, the subject of the court hearing. Then, on January 27, after the court found there was no agreement to disburse the trust funds, the court withdrew the recommitment to the referee and explicitly rejected Arline's objection to allocation, claiming that the 97/3 allocation was "equitable" based on the court's recollection of the divorce proceeding. If the only perceived objection was that there was a 50/50 agreement, the court would have had no need to also address whether the 97/3 allocation was equitable, and to base its determination on its recollection of the divorce proceeding.
The Dissent also suggests that Wis. Stat. § 805.06(5)(a) does not necessarily require the referee to file the transcript, evidence, and exhibits when there is a trial to the court. Our review of the statute indicates that the evidence may not be necessary if the order of reference limits the referee's "powers" or "to report only upon particular issues or to do or perform particular acts," such that there may not be a transcript, or evidence or exhibits. See § 805.06(3). Evidence is not necessary when the parties stipulate that a referee's findings of fact shall be final. See § 805.06(5)(d) ("[W]hen the parties stipulate that a referee's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered."). We are unpersuaded that the court, given Arline's objection, could have simply determined that it need not review the evidence.

On appeal Arline seeks to go back to square one, both before the referee and the circuit court, broadly asking for an evidentiary hearing, the right to cross-examine witnesses, etc. She fails to point to any such request before the circuit court, aside from her August 11, 2015 objection to the allocation of the funds held in trust. We reject Arline's unfocused, unsupported and unpreserved request for a redo. The purpose of an appeal is to specifically identify and address actual, preserved, and prejudicial error.