DANIEL KELLY, J. (concurring).
¶31 We have previously suggested that a habeas petitioner must allege facts supporting the petition's timeliness (see State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶ 25, 290 Wis. 2d 352, 714 N.W.2d 900 ), which I believe is a good and prudent safeguard against abuse of this writ; but Coleman does not establish the timeliness *81 element with clarity, and rather than announcing such an element in a contested case, I believe we should follow the federal court's example of adopting the requirement through rulemaking (see Fed. R. App. P. 9(a) ). With that caveat, I join the court's opinion.
PATIENCE DRAKE ROGGENSACK, C.J. (dissenting).
¶32 The majority opinion errs in three major respects: First, by excusing Lopez-Quintero's insufficiently pled petition; second, by assuming the role of factfinder as it grounds its decision in facts outside of the record that were never pled or supported by affidavit, thereby accepting a petition that never asserts when, where or how Lopez-Quintero specifically directed his attorney to file an appeal; and third, by permitting habeas to lie ten years after Lopez-Quintero's trial and conviction without a reasonable factual basis for the delay, the majority opinion excuses a ten-year delay. This is a sea change in the responsibilities of a habeas petitioner, thereby creating an opportunity for abuse of habeas in regard to direct appeals.
¶33 Accordingly, because the majority opinion overturns long-standing habeas corpus precedent without recognizing that it exists and thereafter does not apply Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as interpreted by the United States Supreme Court in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), in regard to direct appeals, I would affirm the court of appeals, and I respectfully dissent from the majority opinion.
I. BACKGROUND
¶34 On March 7, 2008, Lopez-Quintero was convicted of first-degree intentional homicide with use of a dangerous weapon and carrying a concealed *82 weapon after a six-day jury trial.[1] On April 9, 2008, he was sentenced to life in prison without the possibility of parole. He moved for a new trial.[2] Lopez-Quintero signed a Notice of Right to Seek Postconviction Relief (Notice of Right) form while he was in court on April 9, 2008. Wisconsin Stat. § 973.18(3) requires:
Before adjourning the sentencing proceeding, the judge shall direct the defendant and defendant's trial counsel to sign a form to be entered in the record, indicating that the lawyer has counseled the defendant regarding the decision to seek postconviction relief, and that the *496 defendant understands that a notice of intent to pursue postconviction relief must be filed in the trial court within 20 days after sentencing for that right to be preserved.
Lopez-Quintero was given a copy of the form he signed. Wis. Stat. § 973.18(4). The Notice of Right form does not evidence Lopez-Quintero's intent to appeal. Rather, the box he checked states: "I plan to seek postconviction relief." "Postconviction relief," which is defined in Wis. Stat. § 809.30(1)(c), is not specific to an appeal, but also includes various motions for relief following conviction.
¶35 On June 10, 2008, the circuit court denied Lopez-Quintero's request for a new trial because the evidence of his guilt was so overwhelming that the circuit court concluded a new trial would produce the same result. For example, gunshots that caused the homicide came from a car owned by Lopez-Quintero, *83 and Lopez-Quintero was found a short time after the shooting with the murder weapon tucked into the waistband of his pants.
¶36 When the circuit court denied Lopez-Quintero's motion for a new trial, his attorneys asked about filing an appeal. In preparation for the potential of an appeal, the circuit court granted Lopez-Quintero fee waivers for trial transcripts. The circuit court also waived the service and filing fees that would be applicable if he decided to appeal. In addition, the court directed Lopez-Quintero's trial counsel to continue until a decision about whether to appeal was made. The transcripts for Lopez-Quintero's trial were filed during 2008 and payment was made by the State, according to the record for Kenosha County Case No. 2007CF535.
¶37 Neither Lopez-Quintero nor anyone acting on his behalf filed anything in regard to appealing or inquiring about an appeal of his conviction until February 1, 2018, when the Remington Center filed this petition for writ of habeas corpus on his behalf in the court of appeals.[3]
¶38 The petition for habeas asserts that Lopez-Quintero's "trial attorneys failed to fulfill their constitutional and statutory obligations to file a Notice of Intent to Seek Postconviction Relief ('Notice of Intent') within 20 days after sentencing."[4] The petition alleges *84 that failing to make the appropriate filings within 20 days constituted ineffective assistance of counsel, citing Strickland.
¶39 Although Lopez-Quintero's petition claims ineffective assistance for failing to initiate a direct appeal, the petition is not based on a transcript from an evidentiary hearing where trial counsel was questioned, or on an affidavit of counsel about why a Notice of Intent was not filed, or on Lopez-Quintero's affidavit stating when, where or how he specifically instructed counsel to appeal and that counsel refused to do so.
II. DISCUSSION
A. Standard of Review
¶40 A petition for writ of habeas corpus presents a mixed question of fact and law, wherein we do not disturb historic facts. State v. Pozo, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. However, *497 whether habeas is available to the petitioner is a question of law that we independently review, while benefitting from the discussion of the court of appeals. Id.
B. Habeas Corpus Petition
1. General Principles
¶41 Habeas corpus is a civil action, even if brought about by a criminal charge. State ex rel. McCaffrey v. Shanks, 124 Wis. 2d 216, 223, 369 N.W.2d 743 (1985) (citing State ex rel. Korne v. Wolke, 79 Wis. 2d 22, 26, 255 N.W.2d 446 (1977) ). As is required with other claims for relief, "[a] habeas petition must contain a statement of the legal issues and a sufficient *85 statement of facts that bear on those legal issues, which if found to be true, would entitle the petitioner to relief." State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶ 18, 290 Wis. 2d 352, 714 N.W.2d 900. The burden of proof in a habeas corpus proceeding is on the petitioner to sustain his allegations by a preponderance of the evidence. State ex rel. Reddin v. Meekma, 99 Wis. 2d 56, 61, 298 N.W.2d 192 (Ct. App. 1980) ; State ex rel. Alvarez v. Lotter, 91 Wis. 2d 329, 334, 283 N.W.2d 408 (Ct. App. 1979) (citing Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830, (1941) ); Wenzlaff v. Burke, 250 Wis. 525, 527, 27 N.W.2d 475 (1947).
¶42 Habeas corpus when issued is an equitable writ that permits courts of equity to tailor a remedy that is necessary under the particular facts. State ex rel. Memmel v. Mundy, 75 Wis. 2d 276, 288, 249 N.W.2d 573 (1977). However, habeas is available only when the petitioner's liberty is restrained in violation of the constitution or by a tribunal that lacked jurisdiction. State ex rel. Marberry v. Macht, 2003 WI 79, ¶2, 262 Wis. 2d 720, 665 N.W.2d 155. We have concluded that a petition for habeas corpus is an appropriate vehicle by which to bring a claim of ineffective assistance of appellate counsel. State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540 (1992).
¶43 As we have explained many times, in order to mount a successful claim under Strickland, deficient performance by counsel and prejudice to the defendant must be alleged and proved. Strickland, 466 U.S. at 681-82, 104 S.Ct. 2052. "[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Roe, 528 U.S. at 477, 120 S.Ct. 1029.
¶44 The United States Supreme Court has repeatedly held that disregarding "specific instructions"
*86 from a defendant to file a notice of appeal is "professionally unreasonable." Id. However, a defendant must clearly direct counsel to file an appeal in order to conclude that failing to do so was deficient performance. Id. (explaining that counsel is not deficient for not filing a notice of appeal when defendant has not clearly directed him to appeal). As Roe explained, "[t]o prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id. at 486, 120 S.Ct. 1029.
¶45 In addition, the "right to claim ineffective assistance of counsel for failure to commence an appeal does not exist indefinitely." State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 802, 565 N.W.2d 805 (Ct. App. 1997).[5] As Smalley explained, it was *498 the petitioner's burden to show he was not "capable" of learning prior to filing habeas that counsel had not commenced any type of appeal on his behalf. Id. at 880 n.4, 565 N.W.2d 805. Rather, in order for habeas to issue, the petitioner must show that "the request for relief [was] made promptly and speedily." See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶ 16, 17, 271 Wis. 2d 633, 681 N.W.2d 110 (discussing invocation of the court's equitable *87 powers to issue a writ pursuant to Wis. Stat. § 809.51, a statutory provision that also applies to writs of habeas corpus).
¶46 I further note that "[e]quitable remedies are not available to one whose actions or inactions result in the harm." Lohr v. Viney, 174 Wis. 2d 468, 477, 497 N.W.2d 730 (Ct. App. 1993). In this regard, the petitioner's conduct is a critical factor in deciding whether according habeas relief is appropriate. Coleman, 290 Wis. 2d 352, ¶ 25, 714 N.W.2d 900 (citing Smalley, 211 Wis. 2d at 802 n.7, 565 N.W.2d 805, and explaining that Smalley correctly "places the burden of proof for timeliness of the [habeas] petition on Smalley").
¶47 Furthermore, finality requires that postconviction proceedings not continue indefinitely. State v. Escalona-Naranjo, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994). For example, a convicted person is required to raise all grounds for relief from his or her conviction in the initial Wis. Stat. § 974.06 motion. Id. at 185, 517 N.W.2d 157.
2. Wisconsin Stat. §§ 809.51 and 782.04
¶48 Lopez-Quintero asserts a right to appeal by invoking this court's supervisory jurisdiction pursuant to Wis. Stat. § 809.51. Subsection (1) requires that the petition contain:
(a) A statement of the issues presented by the controversy;
(b) A statement of the facts necessary to understanding of the issues;
(c) The relief sought; and
(d) The reasons why the court should take jurisdiction.
*88 Lopez-Quintero's petition also is required to comply with Wis. Stat. § 782.04(5), which commands a statement of "In what the illegality of the imprisonment consists." State ex rel. Santana v. Endicott, 2006 WI App 13, ¶ 10, 288 Wis. 2d 707, 709 N.W.2d 515.
¶49 Wisconsin Stat. § 809.51(1) requires more than an assertion that Lopez-Quintero wanted a direct appeal and he did not get one. It requires a statement of the "issues presented by the controversy" and "the facts necessary to understanding of the issues." Wisconsin Stat. § 782.04(5) requires an explanation of why Lopez-Quintero is being imprisoned unlawfully. These two statutes form the framework for what must be pled in a habeas petition.
3. Lopez-Quintero's Petition
¶50 Even though the majority opinion labels it as a "sufficiently pled habeas petition,"[6] Lopez-Quintero's petition for habeas is patently inadequate. The petition does not allege facts showing that Lopez-Quintero had made a specific request of counsel to appeal. Rather, the petition for habeas references the June 10, 2008 Affidavit of Indigency. However, that document demonstrates that no decision had been made on whether to appeal: "Atty *499 Frederick Cohn appointed to initiate appeal if desired."[7]
¶51 Because the record before us is deficient, the majority's decision places it in the position of adding facts to the petition, so that if true, the petition would support finding that Lopez-Quintero specifically directed his counsel to appeal. The majority opinion goes on this factual journey with the erroneous belief *89 that "[t]he burden to demonstrate why a statutorily-compliant claim for habeas relief should be denied as untimely rests with the party seeking to avoid a substantive review of the issue."[8] The majority opinion cites Coleman, 290 Wis. 2d 352, ¶ 2, 714 N.W.2d 900 for this amazing proposition. However, paragraph 2 of Coleman focuses on laches, explaining that if the State raises laches as a defense, it has the burden to prove the elements of that defense. However, the State did not plead in response to Lopez-Quintero's petition; therefore, the defense of laches is not at issue. Furthermore, Coleman concludes that habeas petitions have an obligation to plead facts which if true would afford the relief the petition seeks. Id., ¶ 18. Therefore, it is paragraph 18 of Coleman that is significant to Lopez-Quintero's petition, not paragraph 2.
¶52 Furthermore, by finding facts, the majority takes a far different tact than the United States Supreme Court followed in Roe where there had been an evidentiary hearing at which trial counsel testified. Roe, 528 U.S. at 475, 120 S.Ct. 1029. Even after reviewing testimony from that evidentiary hearing, the Supreme Court concluded that the record from the hearing was insufficient; and it remanded for further proceedings. Id. at 487, 120 S.Ct. 1029 (explaining, "we are unable to determine whether [counsel] had a duty to consult with respondent (either because there were potential grounds for appeal or because respondent expressed interest in appealing), whether she satisfied her obligations, and, if she did not, whether respondent was prejudiced thereby.").
¶53 Lopez-Quintero's petition says that he "wanted to pursue postconviction relief" and he and Attorney Christopher Cohen signed a Notice of Right.
*90 The petition also relates that "Lopez-Quintero could not recall any instance where he met with his attorneys to discuss the appeals process after sentencing."
¶54 Apparently the preparer of the habeas petition "spoke with" Attorney Christopher Cohen, but Attorney Cohen "could not remember what transpired between sentencing and the hearing on the motion for new trial that would explain why neither he nor Attorney Frederick Cohn filed a Notice of Intent." There simply is nothing in the petition about when, where or how Lopez-Quintero specifically instructed his trial counsel to appeal or why an appeal was not pursued. Perhaps after denial of the motion for a new trial, counsel and Lopez-Quintero decided an appeal would not be worth pursuing. The petition provides no facts about any discussions with counsel on the merits or lack thereof in regard to an appeal.
¶55 Furthermore, the petition does not evidence that the preparers of the petition reviewed the transcripts of the trial that have been on file with the Racine County Clerk of Court since December of 2008. The petition gives us no indication of whether there was a nonfrivolous issue that would be put forward in an appeal if one were to go forward. Although identification of grounds for appeal is not required, identification of an appealable issue *500 would have been of assistance to Lopez-Quintero's petition. Id. at 487, 120 S.Ct. 1029.
¶56 In addition, the record is silent about why Lopez-Quintero waited ten years before seeking to institute an appeal. While it is true that his trial counsel did not file a Notice of Intent, it did not take Lopez-Quintero ten years to figure out that no appeal was pending. The record shows that he received oral *91 and written notice that he had 20 days after sentencing to preserve his postconviction rights; yet, he did nothing.
¶57 Perhaps because the majority recognized that the habeas petition is deficiently pled, the majority opinion chose to fill in facts that are not in the habeas petition. The majority acknowledges that factual allegations to which it refers are not in the record, and asserts that they came from Lopez-Quintero's brief.[9] If there actually were such facts, they should have been pled in the verified petition or contained within an affidavit signed by Lopez-Quintero that the habeas petition incorporated. There was no affidavit attached to the petition, and none of the facts in ¶26 of the majority opinion are in the petition or anywhere else in the record. Therefore, they should not have been considered when the majority decided that the State's objection to Lopez-Quintero's unexplained ten-year delay in petitioning for habeas was "immaterial."[10] Associated Bank, N.A. v. Brogli, 2018 WI App 47, ¶ 38, 383 Wis. 2d 756, 917 N.W.2d 37 (concluding that a reviewing court cannot resolve questions when pertinent facts are not of record); Lamb v. Manning, 145 Wis. 2d 619, 626, 427 N.W.2d 437 (Ct. App. 1988) (concluding that documents not of record or authenticated by affidavit must be ignored by the court).
¶58 Wisconsin Stat. § 809.51(1)(b) directs that a sufficient habeas petition must be grounded in "a statement of the facts necessary to understanding" how Lopez-Quintero specifically instructed counsel to appeal and that counsel refused to act on his instruction.
*92 His petition, which says only that he wanted to appeal and missed the date, is not sufficient. Stated more completely, the petition does not allege when, where or how Lopez-Quintero specifically directed his trial counsel to appeal. Without Lopez-Quintero's specific direction to appeal, counsel's performance is not deficient. Roe, 528 U.S. at 477, 120 S.Ct. 1029.
¶59 The petition in Coleman is an excellent example of how a petitioner for habeas can fulfill the pleading obligations of Wis. Stat. §§ 809.51(1) and 782.04. Coleman's habeas petition averred that although he wanted to appeal, counsel advised him that he "had no chance of obtaining any relief on appeal." Coleman, 290 Wis. 2d 352, ¶ 8, 714 N.W.2d 900. Coleman's petition then explained that failing to appeal the denial of his suppression motion was ineffective assistance because whether he had standing to challenge the search of his girlfriend's home was a significant and obvious issue. Id., ¶¶ 11, 12. Because denial of Coleman's suppression motion was the genesis for his guilty plea, if he were to prevail on the appeal and evidence found during the warrantless search were suppressed, he would have withdrawn his plea and his conviction would have been reversed. Id.
¶60 In the case before us, it is not surprising that the court of appeals denied *501 the petition as having been filed too late. The petition does not narrate any facts that could be read to show that Lopez-Quintero was not capable of learning for ten years that no appeal was pending. Absent some reasonable narration about why he waited ten years to seek a direct appeal, Wis. Stat. § 809.51(2) gives the court of appeals the discretion to dismiss habeas petitions ex parte. It provides:
*93 The court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition.
¶61 Here, the court of appeals denied the petition ex parte, focusing on the lack of an explanation for the ten years that passed subsequent to Lopez-Quintero's sentencing. However, the inadequacy of Lopez-Quintero's petition should not result in this court giving him a pass on his obligations under Roe, Coleman, Strickland, Wis. Stat. §§ 809.51 and 782.04 to file a verified petition that articulates his specific instructions to counsel to appeal or supportive of a nonfrivolous trial error that he seeks to appeal.
¶62 To some extent, the majority opinion falls into the trap set by Lopez-Quintero's inadequate petition for habeas. The majority opinion does so when it responds to the narration in a petition rather than independently analyzing what is necessary for a sufficient habeas pleading. In so doing, the majority opinion erroneously gives the State the burden of proving that the habeas petition is sufficiently stated, impliedly finds facts necessary to its conclusion that the petition is "statutorily-compliant,"[11] and reverses the discretionary decision of the court of appeals, contending that principles of equity do not "require a habeas petitioner to allege timeliness in the petition."[12]
¶63 The majority opinion never says why the court of appeals erroneously exercised the discretion the legislature granted to it in Wis. Stat. § 809.51(2). If habeas had no time limitations and laches were the only defense to habeas seeking to appeal a ten-year-old *94 conviction, the legislature would not have given courts the statutory authority in § 809.51(2) to deny habeas petitions ex parte. Stated otherwise, ex parte denials of habeas must rely on the sufficiency of the habeas petition because that is all a court would have available to consider prior to a State response.
III. CONCLUSION
¶64 Because, as a matter of law, the foundational pleading requirements of habeas corpus seeking to revive a direct appeal have not been met by Lopez-Quintero's petition, I conclude that the court of appeals did not erroneously exercise its discretion in denying habeas relief ex parte, and I respectfully dissent from the majority opinion.
¶65 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

Lopez-Quintero was represented by privately paid counsel at trial.

Lopez-Quintero's trial counsel represented him on his postconviction motion.

Wisconsin Stat. § 782.04 states that petitions for habeas corpus "must be verified." Maier v. Byrnes, 121 Wis. 2d 258, 262, 358 N.W.2d 833 (Ct. App. 1984). Verification entails signing a document in the presence of a notary public to assure the truthfulness of the factual allegations. Kellner v. Christian, 197 Wis. 2d 183, 188-89, 539 N.W.2d 685 (1995).

"Notice of Intent" starts the postconviction process. Wis. Stat. § 890.30(2)(b). It is the next step after the "Notice of Right" Lopez-Quintero signed in court on April 9, 2008.

The majority opinion overrules State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 802, 565 N.W.2d 805 (Ct. App. 1997). Majority op., ¶1. In so doing, it incorrectly states that Smalley was "abrogated in part by State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900." Coleman did not abrogate Smalley. Rather, Coleman explains that "the Smalley decision actually rests on the application of habeas principles" not on laches. Id., ¶25. In so doing, Coleman affirms Smalley's timeliness requirement.

Majority op., ¶10.

Affidavit of Indigency, p. 1 (emphasis added).

Majority op., ¶27.

Majority op., ¶26.

Id. Can other appellants now supplement habeas petitions with factual allegations in their briefs? If so, this is new law and poor precedent to establish.

Majority op., ¶¶24, 25, 27

Majority op., ¶1.