COURT OF APPEALS
DECISION
DATED AND FILED

March 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP2311-CR**

Cir. Ct. No. 2022CF985

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

TOBIN J. JAGLA,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1    STARK, P.J. Tobin J. Jagla appeals from a judgment, entered pursuant to his no-contest plea, for operating a motor vehicle while intoxicated (OWI), as an eighth offense. Jagla argues that the circuit court erred by failing to grant his motion to suppress evidence gathered during the traffic stop because law

enforcement lacked reasonable suspicion to believe that Jagla was committing a traffic offense. We disagree. In this case, law enforcement reasonably suspected that the vehicle's registered owner was illegally operating without a Wisconsin driver's license and the officer who made the traffic stop lacked any information evidencing that someone other than the vehicle's registered owner was driving. Accordingly, we affirm Jagla's judgment of conviction.

## BACKGROUND

¶2 On October 27, 2022, Officer Dustin Muenster with the Oneida Police Department was on a routine patrol when he saw an individual—who was later identified as Jagla—pumping gas at a gas station just after midnight. Muenster ran the license plate of the vehicle Jagla was driving—a practice he "usually" completes "on vehicles after hours" because "it's bar close time"— which revealed that the registered owner of the vehicle was Santos Garcia. Muenster then ran a search of Garcia's driving history, which revealed that Garcia had not been issued a Wisconsin driver's license.

¶3 Based on that information, Muenster executed a traffic stop shortly after the vehicle Jagla was driving exited the gas station. When Muenster approached the vehicle and made contact with Jagla, he noticed "a strong odor of alcohol emanating from the vehicle" and that "[Jagla's] eyes were glassy and his speech was slurred." Jagla admitted to drinking alcohol. Muenster also observed Jagla "stagger[ing]" when he exited the vehicle, and Jagla declined to perform field sobriety tests. During his investigation, Muenster learned that Jagla had been

2

convicted of OWI on seven prior occasions and that he was subject to a 0.02 blood alcohol concentration restriction.[1]

¶4      The State charged Jagla with eighth-offense OWI, contrary to WIS. STAT. § 346.63(1)(a) (2023-24),[2] and operating a vehicle while revoked, contrary to WIS. STAT. § 343.44(1)(b).   Jagla filed a motion to suppress the evidence derived from the traffic stop, arguing that Muenster lacked reasonable suspicion to stop him.  The circuit court held an evidentiary hearing on the motion.  Muenster testified at the suppression hearing, explaining that he did not observe Jagla exhibiting any illegal or furtive behavior at the gas station, beyond being "suspicious … because it's after hours and [he was] pumping gas."  Muenster also did not witness any traffic violations when Jagla exited the gas station.  He stated that his basis for running the vehicle's license plate was the time of day and "[i]nvestigation of the vehicle."[3]

¶5      According to Muenster's testimony, when he ran the vehicle's license plate, he received a description of the vehicle and information regarding the vehicle's owner, including Garcia's name, date of birth, and address. Muenster did not personally know Garcia, and according to Muenster, a search of

---

[1] Jagla does not specifically challenge his arrest for OWI; therefore, we will not address it further.

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[3] At the suppression hearing, Jagla played for the circuit court the entire surveillance video from the gas station, which depicted, from four different angles, Jagla pumping gas and Muenster patrolling the gas station in his vehicle.

Garcia's driving history did not include a picture.[4]  Thus, all Muenster knew was that Garcia was a male and that he did not have a Wisconsin driver's license.

¶6      Muenster also testified that he observed "a brief outfit of what [Jagla] was wearing.  I could see that [he] had general features of a male.  I was not specifically looking at the male.  I was more focused on the business and the surroundings, the male being part of that."  Muenster further stated that he could see Jagla's "features, what he's wearing, nothing really further than that."

¶7      At the conclusion of the suppression hearing, the circuit court denied Jagla's motion to suppress by oral ruling.  The court explained that because Muenster ran the plates of the vehicle and found that it was registered to an individual who "never had a valid driver's license," if Garcia had been driving, "that would have been a violation of the law."  The court further found that "there's a few year[s] difference" in age between Garcia and Jagla; that they are both males; and that it was unnecessary for Muenster to further investigate before stopping the vehicle, "especially with the second-by-second things that are going on."  Thus, the court concluded that the traffic stop was lawful.

¶8      Thereafter, Jagla pled no contest to the eighth-offense OWI charge, and the State dismissed the operating a vehicle while revoked charge.  The circuit

---

[4]  Muenster explained that he would have had to "request[]" Garcia's picture, but he later noted that if Garcia never had a license, there may not have been a picture available.  Further, Muenster testified that he did not look up a picture because he "already [had] a reason to make contact with the driver of the vehicle."

court sentenced Jagla to five years' initial confinement followed by five years' extended supervision, consecutive to any other sentence. Jagla appeals.[5]

## DISCUSSION

¶9 On appeal, Jagla renews his challenge to the traffic stop, arguing that Muenster lacked reasonable suspicion to stop his vehicle. In particular, Jagla argues that because exemptions exist from the requirement that drivers must possess a valid Wisconsin license, *see* WIS. STAT. § 343.05(3)(a), (4)(b), the fact that Garcia, the registered owner of the vehicle, had not been issued a license did not provide reasonable suspicion of a traffic violation.[6] Further, Jagla contends that Muenster's observations of him at the gas station dispelled any reasonable suspicion that he was the owner of the vehicle "due to the fact that Mr. Jagla was

---

[5] Jagla's appellate challenge to the order denying his motion to suppress evidence is preserved notwithstanding his no-contest plea. *See* WIS. STAT. § 971.31(10).

[6] As an initial matter, the State argues that Jagla forfeited his argument that Wisconsin's driver's license exemptions negate Muenster's reasonable suspicion for the stop. As the State correctly notes, generally, we will not address issues raised for the first time on appeal. *Associated Bank, N.A. v. Brogli*, 2018 WI App 47, ¶26, 383 Wis. 2d 756, 917 N.W.2d 37. However, "[t]he forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530. We may choose to address a forfeited argument if it involves a question of law rather than of fact, if the question of law has been briefed by both parties, and if the question of law is of sufficient public interest to merit a decision. *State v. Ward*, 2000 WI 3, ¶45, 231 Wis. 2d 723, 604 N.W.2d 517.

Here, Jagla argues that his "argument in support of his claim that the officer lacked reasonable suspicion is not forfeited" because he "raised his challenge that the traffic stop was supported by reasonable suspicion in his initial motion." We disagree that Jagla's motion to suppress was sufficient to preserve this appellate argument, where neither the motion nor the suppression hearing included any mention of the driver's license exemptions. *See State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467 (holding that to avoid forfeiture, a party must raise an issue with sufficient prominence such that the circuit court understands that it is called upon to make a ruling). Nevertheless, because this issue involves a question of law, the issue has been briefed by both parties, and the issue is of sufficient public interest, we will address the argument.

of a different ethnicity than Garcia." Accordingly, he asks that we grant his motion to suppress and reverse his judgment of conviction. For the reasons that follow, we reject Jagla's arguments.

¶10 We review a motion to suppress evidence as a question of constitutional fact subject to a two-step standard of review. *State v. Houghton*, 2015 WI 79, ¶18, 364 Wis. 2d 234, 868 N.W.2d 143. In the first step, we will uphold the circuit court's findings of historical fact unless clearly erroneous, and in the second step, we review any constitutional question de novo. *Id.*

¶11 Both the United States and the Wisconsin Constitutions protect against "unreasonable searches and seizures." U.S. CONST. amend. IV; WIS. CONST. art. I, § 11; *see also State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560 ("Wisconsin['s] counterpart, found in [a]rticle I, section 11 of the Wisconsin Constitution, is substantively identical, and we normally interpret it coextensively with the United States Supreme Court's interpretation of the Fourth Amendment." (footnote omitted)). "The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *State v. Gaulrapp*, 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996).

¶12 "Reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop." *Floyd*, 377 Wis. 2d 394, ¶20. "Reasonable suspicion requires that '[t]he officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop.'" *Id.* (alteration in original; citation omitted). Reasonable suspicion is a commonsense, nontechnical standard—

greater than a mere hunch but less demanding than probable cause—that depends upon the facts and circumstances of each case. *See State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. The State bears the burden of establishing the reasonableness of the stop. *State v. Post*, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634.

¶13 The sole issue on appeal is whether Muenster had reasonable suspicion that a traffic violation had occurred or was ongoing. In Wisconsin, "[n]o person may operate a motor vehicle … upon a highway in this state unless the person possesses a valid operator's license issued to the person by the department [of transportation] which is not revoked, suspended, canceled or expired."[7] WIS. STAT. § 343.05(3)(a). Thus, if law enforcement knows or has a reasonable suspicion that a driver does not have a driver's license, an officer may conduct a traffic stop on the driver because he or she would be in violation of § 343.05(3)(a).

¶14 As we have previously explained, as a general matter, a police officer may reasonably assume "that the person driving a particular vehicle is that vehicle's owner." *State v. Newer*, 2007 WI App 236, ¶7, 306 Wis. 2d 193, 742 N.W.2d 923. That assumption may not be "an infallibly true assumption, but that is not what is required for reasonable suspicion": "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Id.* (citation omitted). However, if considering the totality of the circumstances, "an

---

[7] Nevertheless, this provision is subject to exemptions, including for "[a] nonresident who is at least 16 years of age and who has in his or her immediate possession a valid operator's license issued to the person in the person's home jurisdiction," WIS. STAT. § 343.05(4)(b)1., and for certain international citizens, § 343.05(4)(b)2.-3.

officer comes upon information suggesting that the assumption is not valid in a particular case, for example that the vehicle's driver appears to be much older, much younger, or of a different gender than the vehicle's registered owner, reasonable suspicion would, of course, dissipate." *Id.*, ¶8; *see also **Kansas v. Glover**,* 589 U.S. 376, 386 (2020) ("For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not 'raise a suspicion that the particular individual being stopped is engaged in wrongdoing.'" (citation omitted)). Thus, there is reasonable suspicion to stop a vehicle when an officer knows that the registered owner of the vehicle has not been issued a Wisconsin license, unless the officer has information indicating that the registered owner is not driving. *See **Newer**,* 306 Wis. 2d 193, ¶2.

¶15 In this case, we agree with the circuit court and the State that, based on his investigation of the vehicle's license plate and the registered owner, Muenster had reasonable suspicion that the owner of the vehicle Jagla was driving did not have a valid Wisconsin driver's license. Further, Muenster had no reason to believe that Garcia—the vehicle's owner—was not the one driving the vehicle. As the court found and the record supports, Garcia and Jagla are both males, and they are relatively close in age. Thus, it was reasonable for Muenster to assume that the vehicle's driver was Garcia, to suspect that the driver was violating WIS. STAT. § 343.05(3), and to execute a traffic stop.

¶16 We are not otherwise persuaded by Jagla's arguments on appeal. First, Jagla asserts that "[b]ecause exemptions exist from the requirement that drivers possess a valid Wisconsin license, the sole fact that the registered owner of a vehicle has never been issued a Wisconsin driver's license does not provide reasonable suspicion of a traffic violation." According to Jagla, "Muenster had no

knowledge of whether Garcia was a Wisconsin (or United States) resident, when Garcia had established residency if he was, or whether Garcia was exempt from the requirement to possess a Wisconsin license for another reason under WIS. STAT. § 343.05(4)(b)"—although Muenster was aware, based on his testimony, that someone "can register a vehicle and not have a driver's license issued." As a result of "the limited facts known to" Muenster, Jagla contends that "there was no reasonable basis to suspect that the person operating the vehicle was doing so illegally."

¶17    For support, Jagla relies on this court's decision in *State v. Palaia*, No. 2016AP467-CR, unpublished slip op. (WI App Dec. 30, 2016).[8]  In that case, an officer stopped Palaia's vehicle because a records search revealed that one of the vehicle's registered owners—Palaia's husband—had not been issued a driver's license. *Id.*, ¶¶2-3.  When the officer approached the vehicle, he realized that the driver was female. *Id.*, ¶3.  Further, Palaia offered proof at the suppression hearing that she and her spouse were exempt from the requirement to possess a Wisconsin driver's license because her spouse was an active-duty military member. *Id.*, ¶4.

¶18    We reversed the circuit court's denial of Palaia's suppression motion and, in doing so, distinguished the case from *Newer*, where the officer knew that the registered owner's driver's license had been revoked and that he could not lawfully operate the vehicle. *Id.*, ¶10.  We explained that "[t]he fact that one of

---

[8] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

the vehicle's two owners lacks a Wisconsin license, without more information, does not mean an owner is driving illegally." *Id.*

¶19    *Palaia* is not instructive. First, the opinion is authored by a single judge and is, accordingly, not binding authority for this court. *See* WIS. STAT. RULE 809.23(3)(b). Second, the circumstances are not factually similar because *Palaia* involved the question of whether one of the two registered owners was driving. *See Palaia*, No. 2016AP467-CR, ¶¶9-10; *see also Glover*, 589 U.S. at 389 (Kagan, J., concurring) ("[W]hen the officer learns a car has two or more registered owners, the balance of circumstances may tip away from reasonable suspicion that the one with the revoked license is driving."). Here, Muenster could reasonably assume that the driver of the vehicle was the sole registered owner.

¶20    Third, if we were to adopt Jagla's argument based on his reading of *Palaia*, we would improperly import a certainty requirement into the reasonable suspicion analysis. According to Jagla, "[d]riving a Wisconsin registered vehicle without a Wisconsin-issued license is not always a criminal or traffic offense"; therefore, "[w]ithout additional information suggesting that the registered owner would be in violation of criminal or traffic laws[,] … Muenster lacked reasonable suspicion to stop the vehicle." As the State explains, however, the proper inquiry is not whether law enforcement is able to rule out the applicability of any exemptions—i.e., innocent behavior. *See State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394 ("Before initiating a brief stop, an officer is not required to rule out the possibility of innocent behavior."); *State v. Moore*, 2023 WI 50, ¶15, 408 Wis. 2d 16, 991 N.W.2d 412 ("It is black letter law that 'an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause.'" (citation omitted)); *see also Glover*, 589 U.S. at 381 ("The reasonable suspicion inquiry

10

'falls considerably short' of 51% accuracy … for, as we have explained, '[t]o be reasonable is not to be perfect." (alteration in original; citation omitted)).

¶21    In other words, under the facts of this case, Muenster did not need to rule out the possibility that Garcia was subject to a driver's license exemption before stopping the vehicle.  Muenster was aware that the vehicle's registered owner was not licensed in Wisconsin.  Without more information, Muenster was entitled to assume that the vehicle's driver was the vehicle's registered owner.  The possibilities that the driver was not the registered owner or that the owner was exempt from the requirement to possess a Wisconsin driver's license did not diminish Muenster's reasonable suspicion that the driver was violating WIS. STAT. § 343.05(3)(a).

¶22    Finally, Jagla argues that even if "Muenster had reasonable suspicion of a traffic violation," "the totality of the circumstances[,] which include Muenster's observations of Mr. Jagla at the gas station[,] dispel any reasonable suspicion that Mr. Jagla was Santos Garcia, due to the fact that Mr. Jagla was of a different ethnicity than Garcia."  According to Jagla, Wisconsin case law is "clear that where the officer has information to suggest the owner is not driving, that officer does not have reasonable suspicion that the driver of the vehicle is committing a traffic offense based on the revoked license of the registered owner alone."  *See* ***Newer***, 306 Wis. 2d 193, ¶8; ***Glover***, 589 U.S. 376 at 386.  Here, argues Jagla, Garcia's "name indicat[es] Hispanic ethnicity," and Muenster "was able to observe" that Jagla "is white" because he "specifically[] testified that he observed Mr. Jagla's 'features.'"  Thus, Jagla contends that "[t]he fact that Mr. Jagla [did not] appear to match the ethnicity of the registered owner dispels reasonable suspicion in this case and should have indicated to Muenster that he should obtain more information before initiating the traffic stop."

¶23 We conclude that Muenster did not make any observations that would dispel his belief that Garcia may have been the vehicle's driver. Jagla's argument suffers from a critical fallacy: there is no evidence in the record that Garcia is Hispanic or that Muenster knew that Garcia is Hispanic.[9] Further, the circuit court made no findings regarding Garcia's ethnicity. Instead, the court simply reported that both Garcia and Jagla are males and that their birth years are "a few year[s]" apart.

¶24 Regardless, even if we were to assume that Garcia is Hispanic, we agree with the State that if "Muenster observed that Jagla was white, it still made sense for Muenster to initiate the stop" because "[i]t should go without saying that a person with a Hispanic last name need not have Hispanic features." Racially or ethnically profiling an individual on the basis of his or her last name is not the same as, for example, identifying differences such as the age or gender of the individual.[10] *See **Glover***, 589 U.S. at 386.

---

[9] Jagla contends that Muenster testified at the preliminary hearing that he knew that Garcia was Hispanic because "the officer agreed that Santos Garcia was 'a Mexican individual.'" Based on our review of the preliminary hearing testimony, defense counsel asked Muenster the following question: "And the only reason that you followed that car out of … the pump area of the gas station, was to follow up on the fact that the individual that you ran the license plate for which returned a Santos Garcia, a *Mexican individual* … [was] because you knew that individual did not have a license, correct?" (Emphasis added.) Muenster responded, "Correct." Jagla asserts that Muenster's affirmative response to the entire question was an agreement that Garcia is a "Mexican individual." We disagree that Muenster's answer to the compound question regarding the reason he executed the traffic stop was also a confirmation that Garcia is Hispanic. Instead, Muenster testified at the suppression hearing that he did not know Garcia or what he looked like.

[10] Further, although Jagla contends that Muenster should have pulled up a photo of Garcia to confirm that the photo matched the person driving the vehicle, he fails to cite any legal authority supporting that requirement. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶25    Based on the foregoing, we conclude that Muenster had reasonable suspicion to believe that the person driving Garcia's vehicle was violating Wisconsin law; therefore, he appropriately conducted the traffic stop. Accordingly, we affirm Jagla's judgment of conviction.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.