STATE of Wisconsin, Plaintiff-Respondent,

v.

Boon SAVANH, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2583–CR. Submitted on briefs August 10, 2005.*
*—Decided October 5, 2005.*

2005 WI App 245

(Also reported in 707 N.W.2d 549.)

† Petition to review filed.

878

On behalf of the defendant-appellant, the cause was submitted on the brief of *Tim Provis*, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Michael C. Sanders*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Boon Savanh was convicted of delivery and possession of cocaine after the jury heard an informant testify as to statements made by Savanh's nontestifying accomplice. This case requires that we consider whether those statements are "testimonial" within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004), thereby violating the Confrontation Clause. We hold that the informant's statements were not testimonial and so affirm.

*Background*

¶ 2. The essential facts are undisputed. Phanh Neuaone is a citizen informant. Over the course of a year, Neuaone frequently would visit the City of She-

boygan Police Department (SPD) offering information regarding drug dealing. Neuaone often dealt with SPD Officer Yeng Yang, since both speak Laotian. On one occasion he offered information about Savanh and Savanh's roommate, Soun Vongrasamy. Neuaone testified through an interpreter at trial that he had seen Savanh and Vongrasamy, "ha[ve] cocaine and sell[] cocaine . . . every day in the house."

¶ 3. On November 20, 2002, Neuaone initiated contact with Officer Yang offering information about the alleged drug dealing activities of Savanh and Vongrasamy. Yang, SPD Officer Matt Walsh, and Neuaone arranged a "controlled buy," in which Neuaone would be given money to purchase cocaine and fitted with a remote surveillance device, or "wire." In addition to assisting with the drug buy, Neuaone agreed to provide testimony. In exchange, Neuaone asked to regain possession of a car the police had seized a few years earlier after his brother had used it in the commission of a felony.

¶ 4. After Neuaone was fitted with the wire and given $250, Walsh and Yang drove him to the apartment Savanh and Vongrasamy shared. Savanh was not home at the time; only Vongrasamy and an unidentified white male were there. The officers remained in the car monitoring the audiotape.

¶ 5. The ensuing events were revealed to the jury through both Neuaone's testimony and the surveillance tape, which was admitted at trial and translated by Yang. Neuaone testified that Vongrasamy told him they would give him cocaine if he had money; Neuaone assured him he had $250 "right here." He also testified that Vongrasamy responded that the cocaine was not there, and telephoned Savanh to bring it. On the tape, the jury heard Vongrasamy acknowledge to Neuaone

880

that they had "products to sell," that "Boon [Savanh] has all the things," and that Savanh "should return." After some time, during which Vongrasamy offered Neuaone something to eat, the jury also heard Vongrasamy say he would call Savanh.

¶ 6. Due to considerable background noise, portions of the taped conversation were difficult to follow, and Yang could not make out the telephone conversation between Savanh and Vongrasamy. On recross-examination by Savanh's counsel, Neuaone testified that he heard Vongrasamy say on the telephone to Savanh, "We have to go get a pack of cocaine." Later on the tape, Savanh could be heard asking Neuaone "who is he buying for."

¶ 7. About twenty minutes later, Neuaone and Vongrasamy exited the apartment, met Savanh outside, and the three drove off in a sport utility vehicle, Savanh at the wheel. The officers, in an unmarked car, followed the SUV to a city park. They observed the SUV park and saw one occupant exit and run toward the hills and trees. Neuaone testified that Savanh remained in the vehicle with him.

¶ 8. After some time, Vongrasamy returned. Neuaone testified that he gave $200 to Vongrasamy who, in turn, gave him two packages of what proved to be cocaine. The three drove off and Neuaone was dropped off at the same place where he had been picked up. He gave Walsh the recording device, $50 in change and two "rocks" in plastic sandwich bags. Crime lab analysis revealed the "rocks" to be crack cocaine.

¶ 9. Savanh was charged with delivery of cocaine within 1000 feet of a city park, as party to a crime, contrary to Wis. Stat. §§ 939.05, 961.41(1)(cm)1. and

961.49(1)(b)1. (1999–2000)[1] and with possession of cocaine with intent to deliver, contrary to § 961.41(1m)(cm)1. (1999–2000). The matter was tried to a jury on April 29–30, 2003. Vongrasamy was not present at trial and did not testify. Savanh was found guilty on both counts.

¶ 10. On June 30, 2004, Savanh filed a motion for postconviction relief seeking a new trial. He argued that *Crawford*, decided on March 8, 2004, demonstrated that his rights under the Confrontation Clause had been abridged when the trial court admitted Neuaone's testimony reciting Vongrasamy's out-of-court "testimonial" statements. The trial court held that the informal statements were not testimonial and denied Savanh's motion. Savanh appeals from that order, challenging it only as it relates to the delivery conviction.

## *Discussion*

¶ 11. On appeal, Savanh essentially resurrects the argument raised in his postconviction motion.[2] He asserts that under *Crawford*, the admission of testimonial hearsay statements by an unavailable witness violates the Confrontation Clause if there was no prior

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The State argues that Savanh waived review of this issue because he failed to object to Neuaone's testimony. Savanh could not have raised at trial a Confrontation Clause claim based on *Crawford v. Washington*, 541 U.S. 36 (2004), because his April 2003 trial preceded the March 2004 *Crawford* decision by nearly a year. Even so, we may consider a constitutional issue raised for the first time on appeal if it is in the best interests of justice to do so, both parties have had the opportunity to brief the issue and there are no factual issues to resolve. *In re Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846 (1983).

opportunity for cross-examination. *See Crawford,* 541 U.S. at 68. He then contends that the statements of the unavailable accomplice, Vongrasamy, were "testimonial" in nature because they were the result of a police effort to create evidence for trial. He also argues that, under *Lilly v. Virginia,* 527 U.S. 116 (1999), accomplice statements produced through government involvement and not subjected to adversarial testing are "presumptively unreliable." *See id.* at 137. Savanh concludes that he deserves a new trial because his constitutional right to confront his accusers was violated when the trial court admitted the statements of Vongrasamy, the unavailable accomplice, through the testimony of the informant, Neuaone.

¶ 12. We disagree. We hold that Neuaone's testimony that he overheard Vongrasamy say on the telephone to Savanh, "We have to go get a pack of cocaine," is admissible under the rules of evidence and was not "testimonial" within the meaning of *Crawford.* Moreover, *Lilly* is easily distinguishable.

## 1. Admissibility under rules of evidence

¶ 13. When a defendant asserts a Confrontation Clause challenge, we first must determine whether the challenged statements are admissible under the rules of evidence. *See State v. Manuel,* 2005 WI 75, ¶ 23, 281 Wis. 2d 554, 697 N.W.2d 811. A trial court's decision to admit evidence is discretionary, and this court must uphold that decision if there was a proper exercise of discretion. *Id.,* ¶ 24. If the statements are not admissible under the rules of evidence, they are excluded, and we need not proceed to the constitutional question. *State v. Tomlinson,* 2002 WI 91, ¶ 41, 254 Wis. 2d 502,

648 N.W.2d 367. If admissible, however, the next step is to examine whether admission of the statements violated the defendant's right to confront his or her accusers. *Id.*

¶ 14. We only briefly address the first prong, as Savanh has raised no evidence-based objection below and does not assert one here. The statements at issue occurred during conversations between Neuaone, the informant, and Vongrasamy, Savanh's accomplice, relating to a drug buy. Neuaone testified that Vongrasamy asked him if he had money, that the cocaine was not at the apartment, that Vongrasamy then telephoned Savanh and that he heard Vongrasamy say to Savanh on the telephone, "We have to go get a pack of cocaine."

¶ 15. We conclude that, for the purposes of this case, Savanh and Vongrasamy were coconspirators. Sufficient facts exist, including the statements themselves, to establish a conspiracy. *See Bourjaily v. United States,* 483 U.S. 171, 179–81 (1987) (alleged coconspirator's statements themselves may be used to prove existence of conspiracy). Moreover, when the State raised the matter of coconspiracy at the postconviction motion hearing, Savanh did not protest. And here on appeal, Savanh persistently calls Vongrasamy an "accomplice," without either defining that term or drawing any distinction between it and "coconspirator." If Savanh had any objection to the designation of "coconspirator," therefore, it is waived.

¶ 16. An out-of-court statement made by a coconspirator in furtherance of the conspiracy is not hearsay. Wis. Stat. § 908.01(4)(b)5.; *State v. Blalock,* 150 Wis. 2d 688, 699, 442 N.W.2d 514 (Ct. App. 1989). A statement is made "in furtherance of the conspiracy" when the

statement is part of the information flow between conspirators intended to help each perform his or her role. *United States v. Godinez*, 110 F.3d 448, 454 (7th Cir. 1997).[3] A statement of a coconspirator that is not hearsay as provided by § 908.01(4)(b)5. may be used as evidence against another member of the conspiracy. *Blalock*, 150 Wis. 2d at 699. The trial court's determination to admit this evidence represented a proper exercise of its discretion.

## 2. Admissibility under *Crawford*

¶ 17. Having determined that Vongrasamy's out-of-court statements were admissible under the rules of evidence, our next task is to consider whether their admission violated Savanh's right to confrontation. *See Manuel*, 281 Wis. 2d 554, ¶ 25. "The Confrontation Clauses of the United States and Wisconsin Constitutions guarantee criminal defendants the right to confront the witnesses against them." *State v. Hale*, 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 691 N.W.2d 637; U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. We apply United States Supreme Court precedents when interpreting the right of confrontation guaranteed by our state constitution. *Hale*, 277 Wis. 2d 593, ¶ 43. Whether a defendant's right to confrontation has been violated is a question of constitutional fact. *Tomlinson*, 254 Wis. 2d 502, ¶ 39. On review, we adopt the circuit court's findings of historical fact, absent clear error, but we independently apply those facts to the constitutional standard. *Id.*

---

[3] *United States v. Godinez*, 110 F.3d 448, 454 (7th Cir. 1997), addressed FED. R. EVID. 801(d)(2)(E), the identical counterpart of WIS. STAT. § 908.01(4)(b)5. *See State v. Patino*, 177 Wis. 2d 348, 372, 502 N.W.2d 601 (Ct. App. 1993).

¶ 18. *Crawford* put the brakes on nearly a quarter century of Confrontation Clause jurisprudence, as defined by *Ohio v. Roberts*, 448 U.S. 56 (1980). Under *Roberts*, an unavailable witness's statement against a criminal defendant was admissible if the statement bore "adequate indicia of reliability," a test met when the evidence either came within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Id.* at 66. Writing for the Court in *Crawford*, Justice Scalia expressed the concern that *Roberts* had fostered an overemphasis on reliability that oftentimes bore little relation to the abuses the Confrontation Clause targeted, *Crawford*, 541 U.S. at 51, leading to "unpredictability" and "unpardonable" constitutional error. *Id.* at 63.

¶ 19. Accordingly, *Crawford* reoriented the focus of Confrontation Clause claims from reliability back to confrontation. The focus now is on the "testimonial" or "nontestimonial" nature of the out-of-court statements: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69. Regardless of their reliability, therefore, out-of-court testimonial statements are barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. *Id.* at 68.

a. "Testimonial" vs. "nontestimonial"

¶ 20. *Crawford* clearly limited its reach to "testimonial" statements, yet opted to "leave for another day any effort to spell out a comprehensive definition of

886

'testimonial.' " *Id.* Instead, it laid out three "formulations of this core class." *Id.* at 51. We summarize them here:

> 1. *Ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.

> 2. Extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.

> 3. Statements made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial.

*See id.* at 51–52. And "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,] and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68.

¶ 21. With the *Crawford* framework in mind, our first task is to determine whether Vongrasamy's out-of-court statement was "testimonial." Savanh urges that Vongrasamy's statement was testimonial under *Crawford* because of the "[i]nvolvement of government officers in the production of testimony with an eye toward trial." *Id.* at 56 n.7. We disagree.

¶ 22. The three *Crawford* formulations contemplate a measure of formality which gives the declarant some indication of the statement's significance. As the Court observed, the abuses the Confrontation Clause targets are not "off-hand, overheard remark[s]." *Id.* at 51. Rather, the text of the Clause contemplates "wit-

nesses . . . bear[ing] testimony," and "testimony" typically means a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

¶ 23. Vongrasamy's casual remark on the telephone to Savanh, an acquaintance, plainly is not in the nature of either of the first two formulations, "*ex parte* in-court testimony" or "extrajudicial statements . . . contained in formalized testimonial materials." *See id.* at 51–52. That Neuaone, an informant, overheard it does not transform Neuaone into a "government officer" or change the casual remark into a formal statement. Simply put, statements made in furtherance of a conspiracy by their nature are not testimonial. *See id.* at 56.

¶ 24. The only category even arguably applicable is the third formulation, which relates to statements an objective witness reasonably would believe would be available for later use at trial. *See id.* at 52. We comfortably hold that Vongrasamy's statement also falls outside the contours of that category. An objective witness's reasonable belief must be limited to the facts readily available to the actual speaker at the time of the speech at issue, not every fact potentially available to an omniscient observer. *See State v. Douglas D.*, 2001 WI 47, ¶ 34 n.12, 243 Wis. 2d 204, 626 N.W.2d 725.

¶ 25. We do not think an objective witness would reasonably believe that Vongrasamy would have thought his informal telephone conversation with his roommate would be available for use at a later trial. Although Neuaone in fact was a police informant, it borders on the fantastic to imagine that Vongrasamy's

remarks, which included offering refreshments to Neuaone, were coerced or otherwise influenced by that fact. In all probability, Vongrasamy believed Neuaone was there on his own initiative seeking to purchase drugs for himself or an associate. We conclude Neuaone's government affiliation, which was unknown to Vongrasamy, had no impact on producing Vongrasamy's statements.

¶ 26. Savanh also urges that Vongrasamy's statements should not have been admitted under *Lilly*, a case decided pre-*Crawford*. There, the Supreme Court held that the Confrontation Clause barred the admission of a nontestifying accomplice's confession, *Lilly*, 527 U.S. at 120, 139, noting the "presumptive unreliability" which attaches when the government is involved in the production of such confessions and when such statements have not been subjected to adversarial testing. *Id.* at 137. Savanh argues that the Confrontation Clause likewise should bar admission of Vongrasamy's statements because Neuaone's purpose as an informant was to create evidence useful at trial and the resulting statements never underwent prior cross-examination.

¶ 27. Savanh misapprehends both *Lilly* and *Crawford*. *Lilly* does not say that the Confrontation Clause bars admission of a nontestifying accomplice's confession in every instance. Rather, the issue in *Lilly* was the admissibility of a nontestifying accomplice's incriminating statement obtained in the wee hours of the morning after two bouts of police interrogation. *Lilly*, 527 U.S. at 121. The accomplice, the brother of the defendant, gave his confession after the police told him that unless he broke with family, he also might face a life sentence. *Id.* In *Crawford*, too, the issue was the admissibility of a recorded statement made by the defendant's wife during a police interrogation when the wife later invoked the marital privilege against testifying. *Crawford*, 541 U.S.

at 38, 40. The concern in these two cases was that, as the *Crawford* Court termed it, the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." *Id.* at 56 n.7.

¶ 28. Underlying this concern, we believe, is the actual or perceived pressure on the declarant as a result of the government involvement in producing testimony with an eye toward trial. But neither that type of government involvement nor any potentially coercive effect on the declarant was present here. Unlike in *Lilly*, Vongrasamy's statement was not a confession and was not the result of police interrogation. Indeed, the statement was not even made to the government actor; Neuaone simply overheard a conversation between two coconspirators. Vongrasamy did not know that his statements were being recorded and, under the circumstances, could have had no reasonable expectation of them being used against Savanh. These statements were nontestimonial.

### b. Two-part *Roberts* test

¶ 29. Once out-of-court statements are determined to be nontestimonial, the next stage of the admissibility analysis is the two-part *Roberts* test. *See Manuel*, 281 Wis. 2d 554, ¶¶ 60–61; *see also Crawford*, 541 U.S. at 68 (stating that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*"). Part one is unavailability of the witness; part two is whether the statement bears adequate indicia of reliability. *Manuel*, 281 Wis. 2d 554, ¶ 61; *Roberts*, 448 U.S. at 65.

The second prong may be inferred without more where the evidence falls within a firmly rooted hearsay exception or upon a showing of "particularized guarantees of trustworthiness." *Manuel*, 281 Wis. 2d 554, ¶ 61; *Roberts*, 448 U.S. at 66.

¶ 30. We engage in this analysis only briefly because Savanh raised no availability or reliability challenges below or here on appeal.

¶ 31. We hold that part one, Vongrasamy's unavailability, is satisfied, as there is no dispute regarding it. For reasons not made clear to this court, Vongrasamy did not testify at trial, and the parties and the trial court seemed to accept his absence as a settled matter. In addition, proof of unavailability is not required when the hearsay statement is the out-of-court declaration of a coconspirator. *Bourjaily*, 483 U.S. at 182.

¶ 32. We conclude that the second part, whether the statement bears adequate indicia of reliability, also is satisfied. In the first place, these statements fall within a firmly rooted hearsay "exception"[4] as a matter

---

[4] A statement made by a coconspirator in furtherance of the conspiracy is not a hearsay "exception"; it expressly is not hearsay. Wis. Stat. § 908.01(4)(b)5. While hearsay "exemption" is a more appropriate term, statements made under this subsection commonly are analyzed as hearsay and termed hearsay "exceptions." *See, e.g., State v. Webster*, 156 Wis. 2d 510, 522, 458 N.W.2d 373 (Ct. App. 1990) (stating that a statement of a coconspirator "falls within a firmly-rooted hearsay exception as a matter of law"), and *Caccitolo v. State*, 69 Wis. 2d 102, 108, 230 N.W.2d 139 (1975) (discussing the change in the statutory language regarding the admissibility of a "hearsay statement of a coconspirator"). The same is true of the terminology used in discussing its federal counterpart, Fed. R. Evid. 801(d)(2)(E). *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 182–83 (1987)

of law, such that their reliability may be inferred without a showing of particular indicia of reliability. *State v. Webster*, 156 Wis. 2d 510, 522, 458 N.W.2d 373 (Ct. App. 1990). In addition, any inherent unreliability that might accompany coconspirator statements made during the course and in furtherance of the conspiracy is *per se* rebutted by the circumstances giving rise to the long history of admitting such statements. *Lilly*, 527 U.S. at 137; *see Bourjaily*, 483 U.S. at 182–84.

### Conclusion

¶ 33. We hold that Vongrasamy's casual statement to an acquaintance about getting a pack of cocaine, which statement was overheard by someone the declarant did not know was a police informant, does not bear the hallmarks of formality necessary to render it "testimonial" within the meaning of *Crawford*. We affirm the trial court.

*By the Court.*—Order affirmed.

(stating that no independent inquiry into reliability is required when the evidence falls within a firmly rooted hearsay exception and the coconspirator exception is firmly rooted enough to warrant foregoing the reliability inquiry).