COURT OF APPEALS
DECISION
DATED AND FILED

December 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1119-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF2604

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JARED J. LANIER-COTTON,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jared J. Lanier-Cotton appeals his judgment of conviction for substantial battery intending bodily harm, intimidating a witness by use of force, battery to a witness, all as party to a crime, and felony bail jumping. Further, he appeals the trial court's denial of his motion for postconviction relief. Lanier-Cotton argues he received ineffective assistance of counsel because trial counsel failed to object to the State's use of other-acts evidence for an impermissible purpose. Additionally, he contends the trial court erroneously admitted testimony that impermissibly vouched for another witness and admitted impermissible hearsay in violation of his constitutional Confrontation Clause rights. Finally, he argues that the trial court erred when it failed to strike a juror for cause. We reject all of his arguments and, accordingly, we affirm.

## BACKGROUND

¶2 Lanier-Cotton was charged on June 7, 2018 with aggravated battery, use of a dangerous weapon, felony intimidation of a witness by force, use of a dangerous weapon, and felony bail jumping. These charges arose from an incident on May 29, 2018, when Lanier-Cotton confronted N.W., whom he accused of informing the police about his drug dealing. Lanier-Cotton had been arrested for delivery of heroin and cocaine, and he had been released on May 27, 2018, two days before the incident with N.W. Three co-actors joined Lanier-Cotton during the confrontation with N.W. threatening her in various ways, but then the group struck, punched, and kicked her. She was admitted to the hospital with a brain bleed. The police interviewed N.W. at the hospital, noting injuries to her face and head.

¶3 In October 2018, the State moved to join Lanier-Cotton's underlying drug case with the battery case because the evidence in the drug case was

intertwined with the evidence for the charges brought for N.W.'s beating. The trial court granted the motion. Lanier-Cotton subsequently entered into a plea agreement to resolve the charges in his drug case. Lanier-Cotton's battery and witness intimidation case charges remained joined at trial with two of his co-actors, Jan Newton Lanier and Jasmine Lanier.

¶4 The case proceeded to trial in December 2018 on an amended information filed on November 9, 2018, which charged Lanier-Cotton with substantial battery with intent to cause bodily harm, felony intimidation of a witness by use of force or violence, and battery or threat to a witness—all as a party to a crime and use of a dangerous weapon—and felony bail jumping. We discuss Lanier-Cotton's allegations about trial court error or ineffective assistance of counsel with regard to other-acts evidence, improper witness vouching, the admission of hearsay, and the jury selection in detail below. Ultimately, the jury returned guilty verdicts against Lanier-Cotton on all charges, although it did not find that any of the charges were committed while using a dangerous weapon. The trial court held one hearing to sentence him on the guilty verdicts from the jury trial in the battery case and the plea agreement on the drug case. Resolving both cases, the court imposed consecutive sentences totaling seventeen and one-half years of initial confinement and sixteen and one-half years of extended supervision.

¶5      The trial court denied Lanier-Cotton's motion for postconviction relief pursuant to WIS. STAT. § 809.30 (2019-20)[1] in June 2020 without a hearing. This appeal follows. Relevant facts are included below.

## DISCUSSION

¶6      Lanier-Cotton argues that because of trial court errors and ineffective assistance of counsel, he was denied a fair trial and we should grant a new trial.[2] First, Lanier-Cotton argues that he received ineffective assistance of counsel because counsel did not sufficiently object to the State's use of his drug charges as other-acts evidence, which he argues the State used for an impermissible purpose. Second, Lanier-Cotton contends that the trial court erred when it allowed a police witness to vouch for the credibility of N.W. Third, Lanier-Cotton argues that the trial court erred when it admitted his jail telephone calls because they were hearsay and violated his Confrontation Clause rights. Finally, Lanier-Cotton asserts that the trial court allowed an unqualified juror to be seated. We reject Lanier-Cotton's arguments and affirm.

## I.      *Ineffective assistance of counsel*

¶7      Lanier-Cotton argues that trial counsel was ineffective for failing to *sufficiently* object to police testimony about his drug charges.[3] We address Lanier-

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We note that a *Machner* hearing, not a new trial, is generally the appropriate remedy for a claim of ineffective assistance of counsel. *See id.*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979); *State v. Sholar*, 2018 WI 53, ¶53, 381 Wis. 2d 560, 912 N.W.2d 89.

[3] We note that Lanier-Cotton does not argue that trial counsel failed to object, but rather that he did not sufficiently object. The record reflects that trial counsel did object to the admission of the testimony about his drug charges.

Cotton's claim of ineffective assistance of counsel under the familiar two-prong test found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a defendant to show that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. We conclude that Lanier-Cotton has failed to show either deficiency or prejudice in trial counsel's performance.

¶8 The trial court "has broad discretion in determining the relevance and admissibility of proffered evidence." *State v. Oberlander*, 149 Wis. 2d 132, 140, 438 N.W.2d 580 (1989) (citation omitted). We review the trial court's decision on the admissibility of "other-acts evidence for an erroneous exercise of discretion." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399. We will not reverse the trial court's "evidentiary ruling if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted).

¶9 We begin with the pretrial hearing in November 2018, where the circuit court decided that the State could introduce "some basic foundational information" about Lanier-Cotton's drug charges. The State wanted to admit evidence that showed "that a drug investigation occurred, that Jared Lanier-Cotton was identified as the supplier of drugs in that investigation, that a search warrant was conducted at a residence that he was operating out of and that the [confidential informant] in that case is the victim in this case." The prosecutor stated that he would not go into detail.

¶10 During the trial, a Milwaukee Police detective testified that N.W. was employed as a paid confidential informant in the drug investigation that ultimately led to Lanier-Cotton's arrest. The detective testified that "the

5

confidential informant introduced an undercover police officer who began purchasing both crack-cocaine and heroin from Mr. Lanier-Cotton at his residence" in Milwaukee. The "undercover police officer was equipped with both audio and video recordings during" the transactions with Lanier-Cotton. Lanier-Cotton's trial counsel objected to this line of questioning as "irrelevant." However, the court overruled the objection after the prosecutor stated that the questions were designed to establish that the police used a confidential informant, N.W., in their investigation into Lanier-Cotton for drug dealing and that N.W. "testified that she was beat in retaliation for her participation in that investigation."

¶11 The prosecutor then moved to admit three photographs taken during the controlled buys involving Lanier-Cotton. Trial counsel did not object and the exhibits were received. The State continued to question the detective, who testified about Lanier-Cotton's arrest and the search warrant execution at Lanier-Cotton's residence, which yielded firearms and crack-cocaine.

¶12 On appeal, Lanier-Cotton argues that trial counsel's failure to object was deficient performance because the detective's testimony about Lanier-Cotton's drug charges and the admission of the three photos was irrelevant, repetitive, and highly prejudicial. The State argues that Lanier-Cotton has failed to develop an argument to show that trial counsel's failure to object to the photo exhibits was deficient because, as noted above, trial counsel did object to the detective's previous testimony and the trial court overruled the objection.

¶13 The State further argues that trial counsel was not deficient because the evidence was admissible as other-acts evidence. The admission of other-acts evidence is governed by the three-prong analysis set forth in *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). We must consider whether the

other-acts evidence was (1) "offered for an acceptable purpose" as described in WIS. STAT. § 904.04(2); (2) "relevant" in accordance with WIS. STAT. § 904.01, and (3) whether "the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice" as examined in WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73.

¶14 Although the circuit court did not address the *Sullivan* prongs prior to admitting the evidence, in its decision denying Lanier-Cotton's postconviction motion, the court concluded that the State satisfied the first two prongs because the evidence was offered to show Lanier-Cotton's motive for the battery of N.W., and that his motive was relevant to the question of guilt.[4] The State had the burden to show that the first two prongs were satisfied, however, Lanier-Cotton, as the opponent of the admission, had the burden to show that the unfair prejudice substantially outweighed the probative value. *See State v. Marinez*, 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399. The State argues that Lanier-Cotton failed to satisfy the third prong—proving unfair prejudice—because he did not prove that the evidence of drug dealing made the jury more likely to convict him of the charges in this case. We agree.

---

[4] Motive is a permissible purpose of other-acts evidence under WIS. STAT. § 904.04(2)(a) (providing that the permissible purposes of other-acts evidence includes proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Marinez*, 2011 WI 12, ¶33, 331 Wis. 2d 568, 797 N.W.2d 399 (quoting WIS. STAT. § 904.01). A "second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence." *State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998).

7

¶15     Lanier-Cotton argues that the State exceeded the scope for which the evidence was admitted—contending that the State portrayed Lanier-Cotton as a "big time drug dealer with numerous firearms who had made repeated drug sales to undercover officers." However, the record does not reflect that the State used the evidence of Lanier-Cotton's drug charges to show his propensity to commit crime, but offered it to the jury to show motive for this particular act.[5] In the State's opening statement, it referenced that N.W. "agreed to work with law enforcement to buy drugs from Jared Lanier-Cotton .… She introduced an undercover officer to [him] and" that "ultimately led to a search warrant" and his felony charges. In the State's closing arguments, it referenced the other-acts evidence only to show motive, reminding the jury that the defendants "tracked down a confidential informant, and they beat her up so as to intimidate her from testifying or assisting in the investigation" of Lanier-Cotton.

¶16     Accordingly, we conclude that the evidence regarding N.W. serving as confidential informant, introducing Lanier-Cotton to an undercover officer, and detailing Lanier-Cotton's drug charges and activities subsequent to that introduction were introduced at trial for a proper purpose—motive—and was highly relevant to proving the charges of intimidation of a witness and battery or threat to a witness. As the postconviction court noted, the State alleged that

---

[5] The record reflects testimony that Lanier-Cotton's motive to batter and intimidate N.W. was that she was a paid, confidential police informant, whose information led to his drug charges. A Milwaukee police officer testified that N.W. was a paid informant for the police: she "introduced an undercover police officer who began purchasing both crack-cocaine and heroin from Mr. Lanier-Cotton at his residence." The police determined that Lanier-Cotton was aware that N.W. was the informant because a second Milwaukee police officer testified that he reviewed phone calls while Lanier-Cotton was in custody and in one call to Jasmine, he said, "It's [N.W.]" In N.W.'s testimony, she stated that when Lanier-Cotton confronted her—before the beating began—he "started accusing [her] of like setting him up, and … [she] was the one … got him in trouble for the dealing and stuff."

Lanier-Cotton battered and threatened N.W. because she was the confidential informant who had exposed his drug dealing. We conclude that Lanier-Cotton's motive for beating N.W. was highly relevant to the question of his guilt.

¶17 Further, addressing the third prong of the Sullivan analysis—whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, Lanier-Cotton argued that he was prejudiced by the other-acts evidence because it could unfairly lead the jury to believe without persuasive proof that he was a hardened drug dealer with numerous guns. However, Lanier-Cotton's argument is conclusory and speculative. There is no evidence in the record to support that the jury believed what he alleges. We conclude that Lanier-Cotton has failed to show that any unfair prejudice from the jury hearing about the drug charges substantially outweighed the evidence's probative value.[6] Therefore, we conclude that the trial court properly admitted the other-acts evidence. *See **Sullivan***, 216 Wis. 2d at 772-73.

¶18 We also conclude trial counsel's performance was not deficient for failing to continue to pursue an objection to the admission of the other-acts evidence. Because we conclude that the evidence was properly admitted by the trial court, any additional objection would also have not been sustained. "It is not deficient performance for counsel not to make a pointless objection." ***State v. Cameron***, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611. Therefore,

---

[6] Lanier-Cotton contends that it would have been less prejudicial if there had been a stipulation to the drug charges, rather than an introduction through police testimony. However, Lanier-Cotton has failed to develop an argument to show that he was prejudiced by his counsel's failure to request a stipulation to the charges. The record reflects that the State articulated the facts of this crime based on the victim's credibility as a witness and the evidence to support N.W.'s injuries. We do not develop arguments for parties. *See **Associated Bank, N.A. v. Brogli***, 2018 WI App 47, ¶¶26-27, 383 Wis. 2d 756, 917 N.W.2d 37.

we conclude that counsel's performance was not deficient for failing to make a futile objection. Because we conclude that Lanier-Cotton failed to show that trial counsel's performance was deficient, his claim of ineffective assistance fails.[7] *See Strickland*, 466 U.S. at 697.

## II. *Trial court errors*

¶19 Lanier-Cotton's next asserts that the trial court erred in its decisions to admit evidence in two situations: the testimony of the detective who interviewed N.W. at the hospital and the production of two segments of jail phone calls made by Lanier-Cotton in which he expressed that he did not want Jasmine to testify. "A trial court's decision to admit evidence is discretionary, and this court will uphold that decision if there was a proper exercise of discretion." *State v. Manuel*, 2005 WI 75, ¶24, 281 Wis. 2d 554, 697 N.W.2d 811. We reject both of Lanier-Cotton's arguments and conclude that the trial court's decisions were appropriate exercises of discretion.

### A. *Impermissible vouching of N.W.'s testimony by police detective*

¶20 Lanier-Cotton asserts that the trial court erred when it permitted a detective to impermissibly vouch for the truth of N.W.'s testimony. A witness is prohibited from offering an opinion on whether another competent witness is

---

[7] The State argues that Lanier-Cotton cannot establish that trial counsel's performance prejudiced his defense because he has not shown a reasonable probability of a different outcome if the jury had not heard this evidence. Because the evidence was properly admitted as other-acts evidence, we conclude that any additional objections would not have been sustained. Trial counsel's performance is not deficient for failing to make a "pointless objection." *See State v Cameron* 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611. Because we conclude that trial counsel's performance was not deficient, we decline to address the prejudice prong of the analysis.

telling the truth. *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984); *State v. Miller*, 2012 WI App 68, ¶11, 341 Wis. 2d 737, 816 N.W.2d 331. The *Haseltine* rule prohibits vouching for the truthfulness of another witness because it invades the "jury's role as the sole determiner of credibility." *Miller,* 341 Wis. 2d 737, ¶11. It is improper for an attorney to ask "a witness to testify about the truthfulness of another witness' testimony"; however, "*Haseltine* violations do not result in reversible error unless the opinion testimony 'creates too great a possibility that the jury abdicated its fact-finding role' to the witness and did not independently find the defendant's guilt." *State v. Patterson*, 2010 WI 130, ¶58, 329 Wis. 2d 599, 790 N.W.2d 909 (citation omitted).

¶21     We review the record on Lanier-Cotton's allegation. The detective who interviewed N.W. at the hospital testified that N.W.'s account of what happened "was all over the place." He also testified that sometimes when "victims are distraught or due to their injuries" they may remember more details after the initial interview, and that victims rarely tell their stories in a "good way [for the police] to write it down verbatim."

> [DETECTIVE:] So I tried my best to slow her down and put it in chronological order and try to get her statements regarding each suspect that was involved.
>
> [THE STATE:] Okay. Did you—In listening to [N.W.'s] testimony yesterday, do you recall any of the information being substantially different on the day that you interviewed her in the hospital?
>
> [LANIER-COTTON'S   ATTORNEY:] Objection, asking the witness to comment on another witness.
>
> THE COURT: Well, he's not asking for him to comment on another witness. He's asking if there were major discrepancies in the interview that he had with her versus what she said on the stand yesterday. So I will allow that. Overruled.

11

[DETECTIVE:] Only discrepancies I saw or heard were the ones at the end where she said that Jasmine was the last one to leave and the comments of [Lanier-Cotton] saying come on Jaz; let's go or let's leave.

[THE STATE:] You don't recall that from your initial interview with her?

[DETECTIVE:] No.

[THE STATE:] Do you recall her stating things to the contrary?

[DETECTIVE:] No, I don't believe she even said anything about that at the end.

¶22    Lanier-Cotton argues that the trial court erred to overrule trial counsel's objection because asking about discrepancies in N.W.'s testimony essentially asked about her truthfulness, a violation of *Haseltine*. The State argues that the detective was testifying to facts of what N.W. said in her interviews and what N.W. said on the witness stand, not offering his opinion about the truth of what she said in either statement, relying on *State v. Morales-Pedrosa*, 2016 WI App 38, ¶23, 369 Wis. 2d 75, 879 N.W.2d 772. The State contends that the detective's testimony about N.W.'s consistency did not reach the question of the truthfulness of her testimony. In fact, the record reflects that Lanier-Cotton and his co-defendants raised issues about N.W.'s consistency to undermine her credibility.

¶23    Nothing in the record supports any argument that the jury abdicated its role as fact-finder. Further, the court gave the jury instruction on credibility of witnesses, WIS JI—CRIMINAL 300, and we presume the jury followed instructions given by the court, *see Miller*, 341 Wis. 2d 737, ¶22. "Nor do we believe there is any risk that the jury used the detective's testimony to assess" N.W.'s truthfulness. *State v. Smith*, 170 Wis. 2d 701, 718, 490 N.W.2d 40 (Ct. App. 1992). We conclude that the detective's testimony did not invade the province of the jury to

determine credibility and find facts. Therefore, the trial court did not err when it allowed the detective to testify about N.W.'s consistency in her statements about what happened.

### B. Hearsay and Confrontation Clause violation in the jail calls

¶24 Lanier-Cotton contends that the trial court erred when it allowed the State to play for the jury two segments of jail phone calls he made while in custody for the intimidation of a witness, and battery or threat to a witness charges. In the calls, Lanier-Cotton expressed to his girlfriend and his mother that he did not want Jasmine to testify. Lanier-Cotton argues that the jail phone calls violated his constitutional Confrontation Clause rights because the court erroneously concluded that the statements were not hearsay because they are statements of a co-conspirator. *See* WIS. STAT. § 908.01(4)(b)5. He also argues that the phone calls had minimal relevance and that their admission was unfairly prejudicial.

¶25 "When a defendant asserts a Confrontation Clause challenge, we first must determine whether the challenged statements are admissible under the rules of evidence." *State v. Savanh*, 2005 WI App 245, ¶13, 287 Wis. 2d 876, 707 N.W.2d 549. If the statements are admissible, we then examine whether admission of the statements violated the defendant's right to confrontation. *Manuel*, 281 Wis. 2d 554, ¶25.

¶26 We begin our analysis with the State's argument to support the admissibility of the statements that it made at trial: "First of all, they're party statements admissible against [Lanier-Cotton], but in terms of their admissibility against Jan and Jasmine, since we are at the trial for everyone, they are statements of a coconspirator in furtherance of that conspiracy." In contrast, we conclude

13

that, for the purposes of this appeal, Lanier-Cotton's statements were admissible under WIS. STAT. § 908.01(4)(b)1. (providing that a statement is not hearsay when a "party's own statement" is offered against the party). "[A] statement made by a party is not hearsay and may be used against him." *State ex rel. Kalt v. Board of Fire & Police Comm'rs for Milwaukee*, 145 Wis. 2d 504, 515, 427 N.W.2d 408 (Ct. App. 1988). Although Lanier-Cotton's statements were introduced against him as well as his co-defendants, Jasmine and Jan, our issue on appeal is only whether the statements were admissible against him. *See State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (holding that we may affirm to circuit court on different grounds).

¶27 Lanier-Cotton also argues that the phone calls were minimally relevant and only served to inflame the jury and notify the jury that he was in custody. He asserts that the calls were merely an expression of how he wanted the trial to proceed and they reflected his reasonable preference that Jasmine not testify. He also asserts that the admission of the two calls portrayed his perfectly legitimate wish as an unconscionable act in the eyes of the jury. These arguments are conclusory—he does not cite any authority to support his argument and does not develop any argument. Therefore, we do not address his argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we may decline to review issued inadequately briefed or unsupported by references to legal authority).

¶28 We conclude that the trial court's decision to admit the evidence was a proper exercise of discretion because it considered the relevant facts, applied the proper standard of law, and demonstrated a rational process in reaching a reasonable conclusion. *See Manuel*, 281 Wis. 2d 554, ¶24. Further, because Lanier-Cotton's own statements were used against him, he only has himself to

14

confront, therefore, the question of a Confrontation Clause violation is inapplicable.

### III.    *Failure to strike Juror No. 8 for cause*

¶29    Lanier-Cotton argues that Juror No. 8's statements during voir dire showed that she was unqualified to serve and should have been struck for cause by the trial court.  During voir dire, one of Lanier-Cotton's co-defendant's attorneys asked the jurors about their comfort judging this case.  We recite the exchange with Juror No. 8 at the center of Lanier-Cotton's argument:

> [ATTORNEY FOR JASMINE:]  Anybody who has any personal problems with sitting on a jury and making a decision[] about the guilt or innocence of somebody like making a decision as to whether they did or didn't do something from either a religious standpoint or any other personal or professional standpoint?
>
> ….
>
> JUROR NO. 8: Just emotionally I don't think I'm ready.
>
> [ATTORNEY FOR JASMINE:] Is that because you have a religious conviction that you're not supposed to judge people and make decision on it?
>
> JUROR NO. 8:  No, it's not about religious—
>
> [ATTORNEY FOR JASMINE:]  It's internal to you—
>
> JUROR NO. 8:  Yes.

¶30    Juror No. 8 was not struck by the court for cause and no party used a preemptory strike to preclude her from being seated on the jury.  Juror No. 8 remained on the deliberating jury panel and a unanimous verdict was reached on all counts.

¶31   A defendant has a constitutional right to an impartial jury. *See State v. Brunette*, 220 Wis. 2d 431, 439, 583 N.W.2d 174 (Ct. App. 1998). "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." *State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). Under WIS. STAT. § 805.08, the court shall excuse any juror who is "not indifferent to the case." Lanier-Cotton claims Juror No. 8 was unqualified because she did not feel she could decide the guilt or innocence of a defendant.

¶32   Lanier-Cotton did not object to this juror's service during the trial, and we consider his claim forfeited.[8] The circuit court came to a similar conclusion in its decision denying Lanier-Cotton's postconviction motion and reviewed his claim of error in the jury selection as a claim for ineffective assistance. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). To succeed on a claim of ineffective assistance of counsel, Lanier-Cotton would have to demonstrate trial counsel's performance was deficient and prejudicial under *Strickland*, 466 U.S. at 687. Nevertheless, Lanier-Cotton simply repeats his allegations of trial court error and fails to develop a legal argument to support a claim of ineffective assistance. We do not develop arguments for parties and we will not further address Lanier-Cotton's allegations of error in the jury selection. *See Associated Bank, N.A. v. Brogli*, 2018 WI App 47, ¶¶26-27, 383 Wis. 2d 756, 917 N.W.2d 37.

---

[8] Lanier-Cotton's reply brief did not refute the State's argument that he forfeited his unqualified juror claim by failing to raise the issue at trial. We therefore consider Lanier-Cotton to have conceded review of his argument that the trial court erred during jury selection. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that appellant's failure to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

**CONCLUSION**

¶33  We conclude that Lanier-Cotton has failed to show ineffective assistance of counsel for the admission of other-acts evidence related to Lanier-Cotton's drug charges.  Further, we conclude that Lanier-Cotton has failed to show trial court error related to the admission of the detective's testimony about N.W.'s consistency under the *Haseltine* rule or a Confrontation Clause violation for the jail calls.  Finally, we conclude that Lanier-Cotton has forfeited any claim that the trial court erred in failing to strike Juror No. 8 for cause and failed to develop an argument that trial counsel was ineffective in failing to object to Juror No. 8 serving as a juror.  Therefore, we affirm both the judgment of conviction and the order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.